HON. J. G. TALIAFERRO,
HON. R. K. HOWELL,
HON. W. G. WYLY,        } *Associate Justices.*
HON. W. W. HOWE,

---

No. 2410.—STATE OF LOUISIANA ex rel. A. J. OLIVER et al. *v.* H. C. WARMOTH, Governor, et al.—The State intervening.

The writ of mandamus will not lie to compel the chief executive officer of the State to perform any act coming within the range of his duties as Governor.

Under the division of powers as laid down in the Federal and State constitutions, the judiciary department has no jurisdiction over, or right to interfere with, the independent action of the chief executive, in the exercise of the functions of his office, even though the act he is required to perform be purely ministerial in its character. The question whether an act coming within the range of the duties of the chief executive is ministerial or political can not be determined judicially. It must rest with and be determined by the chief executive himself.

APPEAL from the Sixth District Court of New Orleans. *Cooley,* J. *T. A. Bartlette,* for relator, appellee. *S. Belden,* Attorney General, and *Henry C. Dibble,* for defendants, appellants.

TALIAFERRO, J. This appeal is taken by the defendants and the intervenor from a judgment of the lower court, dismissing the intervention and rendering peremptory a mandamus issued upon the application of the relators against the Governor of the State to compel

him to execute and deliver to them forty-eight State bonds, which, they allege, they are entitled to receive in payment of certain public work authorized to be done by the act of the Legislature, approved eighth of September, 1868, entitled "An Act to provide for the improvement of the navigation of Red river." The State intervened, alleging that the act of the Legislature authorizing the issue of the bonds which the relators seek to obtain, is unconstitutional and void, on the ground that it is not in conformity with article one hundred and eleven of the State constitution. On the part of the defendants it is contended that the court is without jurisdiction of the subject matter; that it is not invested with power to compel by mandamus the chief executive officer of the State to perform acts within the sphere of his department. The defendants also allege the unconstitutionality of the act of the Legislature, under which the relators demand the bonds. That act authorized improvements to be made in the navigation of a portion of Red river, above Shreveport, and provided for a survey and letting out of the work, and for payment for it, by State bonds to be delivered to the contractors upon completion of the work, and the presentation of the certificate of the commissioners appointed on the part of the State that the work has been completed according to the contract. Section five provides that "the Governor of the State shall cause to be prepared and printed the number of bonds necessary for delivery to the contractor," etc., "and which said bonds shall be signed by the Governor and countersigned by the Auditor and Treasurer, and delivered to the Auditor and issued by him to the contractors, etc.

The intervention, we think, was properly dismissed; the question of the constitutionality of the act can not be inquired into in this proceeding. The only inquiry is, as to the power or authority of the court to order by writ of mandamus the performance by the Governor of the acts required by the law to be done by him; and this requires us to refer briefly to the three divisions of power established in the foundation of the Federal and State Governments. In the organization of the United States Government its framers adopted, as a principle, that, in order to its stability and faithful administration, the powers of the Government should be distributed between different orders of functionaries, watching and balancing each other. Three separate bodies of magistracy were therefore established: the legislative, the executive and the judicial. It was intended that the functions of these co-ordinate branches of the Government should be conjointly exercised, but that the functions of each should be separately and distinctly exercised within its own sphere, and, as far as practicable, independently of those of the other branches. Neither branch is permitted to exercise the powers appropriately belonging to

another. An extreme jealousy of the least encroachment by one of the departments upon the powers of another has constantly existed ever since the adoption of the constitution of 1787; and very much of the political agitation that has arisen in this country had for its cause the alleged usurpation, by some one of the branches, of the powers and functions of another. The subject must always, from its nature, be a delicate one, and we accordingly find that, when cases involving questions relating to such interference have been presented to the judiciary, either Federal or State, the courts have always proceeded with hesitancy and caution. Direct decisions on questions of this character are not numerous, and those determined by the State courts are not entirely in harmony with each other. Of the cases which have been presented to our consideration by counsel, a decided majority ignore the power of the judiciary to order by process of mandamus the performance of an act required by law to be done by the chief executive officer of the State. A difficulty of no inconsiderable magnitude, we apprehend, arises from the attempt to establish that a distinction is to be taken between an act purely and simply ministerial, and one in which a discretion to perform it or not remains with the executive, and thence to conclude that the performance of the mere ministerial act by the executive may be enforced by the judicial order of a court. We think this doctrine objectionable in this, that it accords to the judiciary the large discretion of determining the character of all acts to be performed by the chief executive officer, as being merely ministerial or otherwise. This would infringe the right of the executive to ·use discretion in determining the same question. He must be presumed to have this discretion, and the right of deciding what acts his duties require him to perform ; otherwise his functions would be trammeled, and the executive branch of the Government made subservient, in an important feature, to the judiciary.

The celebrated case of Marbury v. Madison, 1 Cranch, p. 137, is one usually referred to in discussing questions of the kind under consideration, and different deductions have been drawn from it, so as to present authority on both sides of the question. The facts of the case are, that shortly before the retirement of the elder Adams from the Presidency, Marbury was appointed to the office of justice of the peace for the District of Columbia. His commission was made out, signed by the President, and the great seal of the United States attached. It was, however, not delivered before the expiration of Mr. Adams' term of office; and, upon the incoming of the next administration, Mr. Jefferson instructed Mr. Madison, then Secretary of State, not to deliver the commission. Thereupon Marbury applied to the Supreme Court of the United States for a writ of mandamus ordering the Secretary to deliver the commission. The court decided that it had not

original jurisdiction of the case, and dismissed the application; but intimated very clearly that the writ might be issued by a competent court. But this case affords no satisfactory guide in deciding the one at bar. From the scope of the reasoning in the Marbury case, and in its entirety, we find nothing clearly announcing that a mandamus could properly be directed to the President of the United States ordering him to perform any act within the range of his official duties. In that case the court seems to have assumed that, over the matter involved, the President had no further control; that it had passed beyond his jurisdiction or cognizance; that all the action he was required to take in it had been taken; that he had no further interest or concern about it; that it was not incumbent upon him to deliver the justice's commission, and that he had not been required to deliver it; that the commission lay in the Secretary of State's office, to be given to the appointee when he applied for it; that the act to be done was simply the manual delivery of the document by the Secretary, or one of his clerks, to Mr. Marbury, and that, under this state of facts, the mandamus, had one been directed to the Secretary to perform the act, would have been no encroachment upon the rights of the executive. A right in the judiciary to interfere with or encroach upon the rights or functions of the executive is distinctly and *ex industria* disavowed. Nevertheless, it is a matter of history that Mr. Jefferson, one of the founders of the Government, and well versed in the knowledge of its character, eminent as a statesman and politician, and respectable as a jurist, never conceded the correctness of the views taken of that subject by the very learned and able Chief Justice, and ever held that the doctrine enunciated in the *obiter dictum* of Judge Marshall sanctioned an encroachment upon the powers of the executive department which is incompatible with their independent exercise.

When the official acts to be performed by the executive branch of the Government are divided into ministerial and political, and courts assume the right to enforce the performance of the former, it opens a wide margin for the exercise of judicial power. The judge may say what acts are ministerial and what political. Circumstances may arise and conditions may exist which would require the Governor of a State in the proper exercise of his duty, and with regard to the interests of the State, *not* to perform a ministerial act. Is the judge to determine his duty in such a case, and compel him to perform it ? The reasons of the executive for the non-performance of an act the judge may never know, or, if brought to his knowledge, he may review and overrule them, and, in so doing, assume political functions. He would determine in such a case the policy of doing the act. The legislator himself who prescribed the act might hold the executive harmless, while the judge condemned him. In cases where the question of the

right of State courts to issue writs of mandamus compelling the chief executive officer of the State to perform acts appertaining to his functions, we find that decisions adverse to the existence of such right have been rendered by courts of the last resort in Maine, New Jersey, Illinois, Missouri, Arkansas, Georgia and Texas, to which may also be added a very recent case decided in Rhode Island. In Ohio and North Carolina a different view has been taken. It was held in these States that a mandamus might issue against the Governor of a State to compel the performance of mere ministerial acts. Of the decisions of this question in our sister States, those determining against the right of the judiciary to interpose its authority in matters relating to the duties and functions of the executive department, we regard as greatly preponderating in number and weight of authority.

A case decided in Illinois, in 1857, The People ex. rel. *v.* Bissell, 19 Illinois Reports, 230, is identical with the one before us. An application was filed by the relator asking for a writ of mandamus commanding the Governor of Illinois to issue to the relator certain interest bonds or certificates to which he claimed to be entitled. In that case the Supreme Court of Illinois said: "We have no power to compel either of the other departments of the Government to perform any duty which the constitution or the law may impose upon them, no matter how palpable such duty may be, any more than either of those departments may compel us to perform our duties. The Governor is and must be as independent of us as is the Legislature, or as we are of either of them. So far as the question of power or jurisdiction is concerned, there can be no difference whether the act or omission may affect one or many; whether it may be prejudicial to the rights of an individual or the whole community. What difference, whether the executive act required by law be to order an election, or appoint an officer, or issue a bond? Upon the Governor alone must the responsibility rest of acting, or refusing to act."

A member of the court concurring adds: "The executive has certain duties imposed upon him by the constitution and the laws of the State. Should he fail to perform them, without justifiable reasons therefor, and the public be injured, impeachment and deprivation of office would follow. This court has no control over him to compel him to perform any public duty. In his sphere he is independent of the court. Should he consent to appear, asking our opinion on a point of duty, it would be readily given. We can not compel him to appear, and no order we might issue for such purpose could be available should he resist. In matters of public duty we remit him to the high tribunal of his own conscience and the public judgment."

A supervisory control by one of the co-ordinate branches of the Government over the functions and duties of another branch would

necessarily diminish the responsibility of the branch whose functions were encroached upon. The more distinct and independent the action of public functionaries, the stronger and more direct their responsibility. This ground of responsibility was doubtless one of the purposes aimed at by the framers of the Government, in the separation of powers. Constitutional provisions were wisely made for the punishment of officials, however exalted, for dereliction of duty. But, at the same time, something was necessarily to be intrusted to the intelligence and probity of the officer, who, from a consciousness of the trust and confidence reposed in him, would be thereby induced to discharge his duties honestly, from a sense of honor and propriety.

We are satisfied, from the views we have taken of this subject, that there is error in the order of the court below rendering the mandamus peremptory. It is therefore ordered, adjudged and decreed that the judgment of the lower court be annulled, avoided and reversed. It is further ordered that the writ of mandamus be set aside and discharged, the relators paying costs in both courts.

Rehearing refused.