[Decided October.16, 1894.]

## STATE *v.* PENNOYER.

[S. C. 37 Pac. 906; 25 L. R. A. 862.]

INJUNCTION — CONSTITUTIONAL LAW — TAXES AND TAXATION — STATE INSTITUTIONS.— An injunction against using state moneys to build a state institution, such as a branch insane asylum, elsewhere than at the seat of government cannot be granted merely on the ground that the constitution requires its location at the capital, where it does not appear that the cost to the state will be any greater at one place than the other: *Sherman* v. *Bellows*, 24 Or. 553, approved and followed.  .

APPEAL from Marion: GEO. H. BURNETT, Judge.

This suit was instituted by the State upon the relation of A. C. Taylor, to have the defendants Sylvester Pennoyer, governor; Philip Metschan, state treasurer; and Geo. W. McBride, secretary of state, acting in their capacity as the board of commissioners of public buildings of the State of Oregon, enjoined and restrained from purchasing six hundred and forty acres of land in Union County in this state to be used as a site for a branch insane asylum, and expending therefor of the public funds the sum of twenty-five thousand dollars; from constructing buildings thereon to be used as a hospital for the care of insane persons who should be lawfully committed thereto for care and treatment at the expense of the state; and from expending the funds appropriated therefor. The legislative assembly at its last session passed an act "to provide for the location and construction of a branch insane asylum in the eastern portion of Oregon, and appropriating money therefor," which provided, among other

things, that the governor, secretary of state, and state treasurer, acting in the capacity of a board of commissioners of public buildings of the State of Oregon should within sixty days after the act took effect locate a site for a branch insane asylum to be known as " 'The Eastern Oregon Insane Asylum,' at some point in one of the following named counties: Wasco, Sherman, Gilliam, Morrow, Umatilla, Union, Crook, or Baker. That said board shall contract for and purchase in the name of and for the state, at the place selected for said asylum, a tract of land consisting of not less than three hundred and twenty acres nor more than six hundred and forty acres, and shall in the manner provided for by the act proceed to erect and construct upon said premises an asylum building and outbuildings, and make suitable improvements, and supply the same with furniture and fixtures and everything necessary and requisite to fully complete and equip said Eastern Oregon Asylum at a cost not exceeding the sum of one hundred and sixty-five thousand dollars." For the purpose of purchasing the land and erecting the asylum buildings the act appropriates out of the public treasury of the state from any moneys not otherwise appropriated one hundred and sixty-five thousand dollars, or so much thereof as may be necessary.

The complaint alleges, in substance: That the relator is a taxpayer and citizen of the state; that the defendants Pennoyer, McBride, and Metschan, as governor, secretary, and treasurer of the State of Oregon, constitute the board of commissioners of public buildings of the state; that by virtue of the powers in them vested as such board, under the provisions of a pretended act of the legislative assembly which it is claimed passed the assembly at its seventeenth biennial session, the defendants are about to purchase with the moneys of the plaintiff, sought to be appropriated by said legislative assembly for the purpose,

six hundred and forty acres of land in Union County, Oregon, for the sum of twenty-five thousand dollars, to be used as a site for a branch insane asylum for the state; that defendants in their capacity as such board are about to expend of the moneys of the plaintiff, sought to be appropriated as aforesaid, the sum of one hundred and forty thousand dollars in constructing buildings on said land to be used as a hospital for the care of a portion of the insane of said state who may be hereafter lawfully committed to such institution for care and treatment at the expense of the state; that said asylum, if constructed as intended, will be one of the public institutions of the state, and that unless restrained defendants will purchase and pay for said lands and build and pay for said buildings, with the money of the state to the great and irreparable injury of plaintiff; and that plaintiff has no other plain, speedy, or adequate remedy at law. To this complaint the defendants interposed a demurrer and for ground thereof alleged: *First*, that neither the state, nor the relator, or the plaintiff, have any legal capacity to bring this suit; *second*, that the complaint does not state facts sufficient to constitute a cause of suit against the defendants or either of them; *third*, the complaint does not state facts to constitute any injury threatened to the plaintiff; *fourth*, that no cause is stated in said complaint for the issuance of an injunction. The demurrer was overruled by the court below, and the cause is here for consideration upon the question arising upon the complaint and demurrer.      REVERSED.

*Messrs. Julius C. Moreland,* and *Thos. H. Crawford,* for Appellant.

The mere allegation of irreparable injury is not sufficient; the facts must be stated: *Burnett* v. *Whitesides,* 13 Cal. 156; *Branch Turnpike Company* v. *Yuba County Super-*

*visors*, 13 Cal. 190; *Hoke* v. *Perdue*, 62 Cal. 545; *Portland* v. *Baker*, 8 Or. 356; *Schurmeir* v. *St. Paul and Pacific Railroad Company*, 8 Minn. 113, 83 Am. Dec. 770. When an individual seeks to bring in the aid of the state he must be injured: *State* v. *Shively*, 10 Or. 267. A civil action cannot be maintained in the name of the state to redress private wrongs: *People* v. *Albany and Susquehana Railroad Company*, 57 N. Y. 161; see also *People* v. *Miner*, 2 Lans. 396. There is no authority in the statute for the district attorney to bring this proceeding. Courts cannot supply omissions in legislation: *State* v. *Simon*, 20 Or. 373; *Baker* v. *Payne*, 22 Or. 341; *King* v. *Burrell*, 12 Ad. & Ell. 468. The complainant who seeks an injunction must be able to specify some particular act, the performance of which will damnify him, and it is such act alone that he can restrain: *Gibbs* v. *Green*, 54 Miss. 612. In no case will an injunction be granted unless the right thereunto be clear: *Tongue* v. *Gaston*, 10 Or. 328; High on Injunctions (3d ed.), § 1327; *People* v. *New York Canal Board*, 55 N. Y. 397.

Messrs. *H. J. Bigger*, and *W. H. Holmes* (*Mr. Jas. McCain*, district attorney, on the brief), for Respondent.

A taxpayer is the proper party to enjoin illegal diversion of public funds and property: *Carman* v. *Woodruff*, 10 Or. 133; *White* v. *Multnomah County Commissioners*, 13 Or. 317, 57 Am. Rep. 20, 54 Am. Rep. 832; *Wormington* v. *Pierce*, 22 Or. 606; *Baker* v. *Payne*, 22 Or. 335; *Rice* v. *Smith*, 9 Iowa, 570; *Drake* v. *Phillips*, 40 Ill. 388; *Colton* v. *Hanchett*, 13 Ill. 615; *Webster* v. *Harwinton*, 32 Conn. 131; *Portland and Willamette Valley Railroad Company* v. *Portland*, 14 Or. 188, 58 Am. Rep. 299. The relator need not be the real party, or have any special interest to enforce a public right, but as a voter and citizen he has a general interest in the execution of the law: *State* v. *Ware*, 13 Or. 380; *Pike County* v.

*People,* 11 Ill. 208; *Hall* v. *People,* 57 Ill. 307; *Glencoe* v.
*People,* 78 Ill. 383; *People* v. *Pacheco,* 29 Cal. 212; *Linden*
v. *Alameda Supervisors,* 45 Cal. 7; *Sanger* v. *Kennebec County
Commissioners,* 25 Me. 291; *Heffner* v. *Commonwealth,* 28 Pa.
108; *People* v. *Regents of University of Michigan,* 4 Mich. 98.
Injunction is the proper, in fact, the only remedy, as the
defendants have acted in violation of the constitution: *State*
v. *Judge of Seventh Judicial District Court,* 42 La. Ann. 1104;
*Bradley* v. *Powell County Commissioners,* 2 Humph. 428, 37
Am. Dec. 563; *Ford* v. *Farmer,* 9 Humph. 157; *Bridgenor* v.
*Rodgers,* 1 Coldw. 259; *Marion County* v. *Grundy County,*
5 Sneed. 490; Hilliard on Injunctions, 443; High on Injunc-
tions, §§ 1308, 1319, 1321, 1327; Cooley on Constitutional
Limitations, 81–93; Sutherland on Statutory Construction,
§§ 307, 308.   The appellants have no discretion: Throop on
Public Offenses, §§ 555, 846, note 5, 853, and note 3.   Con-
stitutions are to be construed strictly: *Gibbons* v. *Ogden,*
22 U. S. (9 Wheat.), 188, 6 L. ed. 68.

Opinion by MR. JUSTICE WOLVERTON.

This case is only distinguishable from the case of *Sher-
man* v. *Bellows,* 24 Or. 553, 34 Pac. 549, in that it is brought
in the name of the State upon the relation of a private
individual, instead of in the name of a private individual
directly.   It is the settled doctrine of this state that an in-
dividual taxpayer, whose burdens would be increased by
the wrongful acts of public officers, and where a fraudu-
lent or illegal diversion or misapplication of the public
funds is about to be consummated, has such an interest by
reason of the special and peculiar injury he would sustain,
as will give him a standing in a court of equity by injunc-
tion to restrain such acts, and prevent such diversion of
the public funds: *Carman* v. *Woodruff,* 10 Or. 133.   This
doctrine is so well established and sustained by the un-

doubted weight of authority in the United States that it is unnecessary to enumerate the cases sustaining it. The taxpayer must, however, present such a case as will bring him within the ordinary equitable rules which govern when relief by injunction is sought. He must show that some act is threatened or imminent which will result in some material injury to himself, for which there is no adequate remedy at law. It is not sufficient that he apprehends injurious consequences, which neither actually exist nor are threatened. Fanciful, speculative, or even possible evil results are too remote and indefinite upon which to call into requisition the restraining process of a court of equity.* This rule is applicable as well when the state is a party plaintiff as where an individual occupies a like position. ALLEN, J., in *People* v. *Canal Board*, 55 N. Y. 395, says: "When the state as plaintiff invokes the aid of a court of equity, it is not exempt from the rules applicable to ordinary suitors; that is, it must establish a case of equitable cognizance, and a right to the peculiar relief demanded." See also 2 High on Injunctions, § 1327. So that, in legal effect, the position occupied by plaintiff herein is not superior to or different from that of the plaintiff in *Sherman* v. *Bellows*, 24 Or. 553, 34 Pac. 549. The state represents the aggregate of individual taxpayers; the individual represents himself only, but incidentally the whole people, and the object sought to be attained is identical. The acts violative of law or trust relations which will result in material injury to the individual must be threatened or imminent to entitle him to the interposition of a court of equity, and in principle there exists no reason why a different equitable rule should apply wherein the state is plaintiff.

The contention of the plaintiff is that the legislative

---

*On this point see also *Esson* v. *Wattier*, 25 Or. 7.—REPORTER.

act aforesaid is in contravention of section 3, article XIV, of the state constitution, which is as follows: "The seat of· government, when established as provided in section 1, shall not be removed for the term of twenty years from the time of such establishment; nor in any other manner than as provided in the first section of this article; *provided*, that all public institutions of the state, hereafter provided for by the legislative assembly, shall be located at the seat of government," and therefor void and inoperative; that the clause "public institutions of the state" means or includes the public buildings thereof; that the branch insane asylum provided for by the act is a public institution in that sense, and therefore should, under the constitution, be located at the seat of government.    In *Elliott* v. *Oliver*, 22 Or. 47, 29 Pac. 1, Mr. Justice LORD says: "As a general rule a court will not pass upon a constitutional question and decide a statute to be invalid, unless a decision upon that very point becomes necessary to the determination of the cause," citing in support thereof *Ex parte Randolph*, 2 Brock. 448, Fed. Cas. 11558; *Hoover* v. *Wood*, 9 Ind. 287; Cooley's Constitutional Limitations, *163.    This rule arises out of the due respect which one coördinate branch of a state government entertains towards another.    The legislature in adopting laws for the government of the people does so under its construction of the constitution, and the just presumption always prevails that the business of the legislature is transacted with due regard for the fundamental law by which its acts are limited and governed.    It must be a clear case, therefore, and one in which the constitutional question is the very *lis mota*, before courts will assume the responsibility of declaring an act of the legislative assembly void upon constitutional grounds, and reverse the judgment of a coördinate branch of the state government. Does the plaintiff present such a case and has it exhibited

such equities as to entitle it to the relief demanded? The legislature, acting in its legislative and discretionary capacity, has, by adopting the act in question, declared in effect—*first,* that a new asylum building is required for the accommodation and proper care and treatment of the insane and idiotic of the state; *second,* that it is to the best interests of the state and such unfortunates that the same be located in the eastern part of the state; and, *third,* that one hundred and sixty-five thousand dollars is required for its construction and completion, and makes an appropriation accordingly. No one will contend but what the legislature had a perfect constitutional right to determine upon the necessity for an additional building, and the amount of funds necessary for the construction thereof, and to make an appropriation therefor. What the difference will be between the cost of construction and maintenance of such a building as an asylum at the seat of government, and a like building and its maintenance in eastern Oregon, is not made apparent by the complaint; and this is wherein the plaintiff fails to show that the burdens of taxation of its citizens will be increased, or that any additional amount of public funds will be required, as a consequence of its erection at the latter place. This is the exact ground upon which the case of *Sherman* v. *Bellows,* 24 Or. 553, was decided, and we see no reason now for disturbing that decision.

Mr. Justice MOORE, speaking for the court in that case, says: "Conceding, without deciding, that the soldiers' home is a public institution of the state, provided by the legislative assembly, and that section 3 of article XIV of the constitution required the trustees to locate it at Salem; that they had threatened to violate their official duty by locating it at Roseburg; does it appear that the plaintiff has sustained a personal injury thereby? If it were alleged that in consequence of the location of the soldiers'

home at Roseburg, plaintiff's property would be subjected
to a burden of taxation in addition to that which it would
be required to bear if located at Salem, then he would
sustain a personal injury; and, since an adequate compen-
sation cannot be had at law, he would be entitled to an
injunction to prevent such location." MITCHELL, J., in
*Thompson* v. *The Commissioners of the Canal Fund*, 2 Abb.
Pr. 252, in speaking of the equitable remedy by way of in-
junction, says: "It was never granted merely to prevent
an officer from carrying out a law of the state because it
was deemed unconstitutional, where some equity was not
the foundation of the bill": 2 High on Injunctions, § 1326.
CHALMERS, J., in *Gibbs* v. *Green*, 54 Miss. 612, says:
"Neither an executive nor a ministerial officer can be en-
joined generally from putting a law into force (citing
*Mississippi* v. *Johnson*, 4 Wall. 475). The complainant who
seeks an injunction must be able to specify some particu-
lar act the performance of which will damnify him, and it
is such act alone that he can restrain. This court has no
power to examine an act of the legislature generally, and
declare it unconstitutional. The limit of our authority in
this respect is to disregard, as in violation of the consti-
tution, any act or part of an act which stands in the way
of the legal rights of a suitor before us; but a suitor who
calls upon a court of chancery to arrest the performance
of a duty imposed by the legislature upon a public officer,
must show conclusively, not only that the act about to be
performed is unconstitutional, but also that it will inflict a
direct injury upon him."

The case at bar presents the peculiar situation of the
state calling into requisition one coördinate branch of the
government to enjoin the executive and ministerial officers
of the state, acting in the capacity of a board of commis-
sioners of public buildings, from carrying out the pro-
visions of a law adopted by another coördinate branch of

the same state government. The contention of the state is that the court must interpose by the extraordinary remedy of injunction, and render nugatory the solemn enactment of a coördinate branch of its government, as in contravention of the fundamental law, without at the same time alleging any facts showing wherein and in what manner the state would be damnified, and without exhibiting any good or sufficient reason for the exercise of such extraordinary power. A mere suggestion that the act complained of is unconstitutional, and that the legislature has exceeded its constitutional limitations, is insufficient to call into requisition a court of equity. "The court, as such, has no supervisory power or jurisdiction over public officials or public bodies": *People of New York* v. *Canal Board*, 55 N. Y. 395. The state, when equitable relief is sought, such as is prayed for in the present proceeding, must like private individuals bring itself within the known and fixed rules of equitable interference before the court will grant its petition. It follows from these conclusions that the demurrer should be sustained, and it is so ordered, and that the cause be remanded to the court below for further proceedings not inconsistent with this opinion.

REVERSED.

[Decided January 14, 1895.]

MOTION TO RECALL MANDATE.

PER CURIAM. The application to recall the mandate in this case is based upon the assumption that a preliminary injunction was issued by the court below which has been in terms dissolved by the decree or judgment in this court entered by the clerk, which entry was made under the impression that no such injunction was issued. The decision heretofore made proceeds upon the theory that the complaint does not state a cause of suit, and for that reason it was error in the court below to overrule the demurrer and enter a decree as prayed for in the complaint.

But because it was thought the defect could perhaps be remedied by amendment, the cause was ordered remanded for further proceedings not inconsistent with the opinion, so that plaintiff might thereby be given an opportunity to apply in the court below for leave to amend, if so advised. This conclusion necessarily reversed and annulled the decree of the court below making the injunction perpetual, but it was not intended or designed to interfere with or disturb any preliminary injunction which may have been issued by the court. It was the intention to leave the case *in statu quo* until plaintiff could have an opportunity, by permission of the court below, to frame a complaint, if the facts justified, so as to present the important public question which it desired to have decided. It is not clear from the record whether a preliminary injunction was in fact issued or served, but in order to avoid any question as to the effect of the order in this court reversing the decree, the mandate will be recalled and the decree amended so as not to interfere with any preliminary injunction or restraining order which may have been issued by the court below. The case was decided on the sixteenth of November, eighteen hundred and ninety-three, and the mandate issued on the thirteenth of the following month and then at the request of both parties, and it is to be regretted that counsel for plaintiff did not take the precaution to observe the form of the decree before the mandate was issued and thereby obviate the delay incident to this proceeding.