Original proceeding in mandamus; argued December 9; writ
denied December 12, 1930.

# PUTNAM *v.* NORBLAD

(293 P. 940)

*John Bayne* of Salem for petitioner.

*Miles H. McKey,* Assistant Attorney General (I. H. Van Winkle, Attorney General, of Salem, on the brief), for defendant.

BEAN, J. The alternative writ further shows that the petitioner George Putnam is a citizen of the state of Oregon and a duly registered and qualified elector and taxpayer in Marion county, Oregon; that Senator-elect Lloyd T. Reynolds died on November 24, 1930, and that there is a vacancy in the office of senator from the district in the legislative assembly which will convene on January 12, 1931.

Section 3, article IV of the Constitution, previous to its amendment, provided that "The senators and representatives shall be chosen by the electors of the respective counties or districts into which the state may from time to time be divided by law." That section was amended by the electors at the general election on November 4, 1930, by adding the following:

"If a vacancy in the office of senator or representative from any county or district shall occur, such vacancy shall be filled as may be provided by law."

The amendment was proclaimed and declared by the Governor to have been adopted on November 29, 1930.

Section 4 of article IV provides that "The senator shall be elected for the term of four years, * * * from the day next after their general election; * * *."

Prior to the adoption of the above-mentioned amendment, section 17 of article V of the Constitution provided as follows:

"He [the governor] shall issue writs of election to fill such vacancies as may have occurred in the legislative assembly."

Oregon Code 1930, § 36-1901 (Or. L., § 4038), provides in part as follows:

"* * * and when any vacancy shall happen in the office of member of the senate or house of representatives, by death, resignation, or otherwise, and a session of the legislature is to take place before the next biennial election, the governor shall issue a writ of election, directed to the sheriff of the county, or sheriffs of the counties composing the district in which such vacancy shall occur, commanding him or them to notify the several judges of election in his county or their district to hold a special election to fill such vacancy or vacancies, at a time appointed by the governor."

The Governor, appearing by the Attorney General, interposed a demurrer to the alternative writ for the reason that it appears therefrom: (1) that the plaintiff does not have legal capacity to bring this proceeding; (2) that said alternative writ does not contain facts sufficient to constitute a cause of action against defendant. Therefore, the consideration of the questions raised by the demurrer are, first, as to the authority of a private citizen to institute the action without the authority of an executive law officer, the Attorney

General or prosecuting attorney; and, second, the right or propriety of the court's interfering with the duties of the chief executive of the state in the matter. The Attorney General does not urge the defect in the matter of form of the title of the case and concedes that the petitioner would be a proper relator, but the matter of importance here is the authorization of instituting the action on behalf of the state.

The writ of mandamus, by virtue of the provisions of Oregon Code 1930, § 8-302 (Or. L., § 613).

"may be issued to any inferior court, corporation, board, officer, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station; but though the writ may require such court, corporation, board, officer, or person to exercise its or his judgment, or proceed to the discharge of any of its or his functions, it shall not control judicial discretion."

A suit by the state in its sovereign capacity instituted by its executive law officer, the Attorney General or district attorney, can protect or enforce the rights of a citizen of the state who cannot protect them by a suit instituted by himself. In a suit or action by an individual, he is required to show some special injury to himself and when the wrong complained of is public in its character, affecting no one citizen more than another, it is impossible for him to show such injury, and for that reason he is without remedy, although he may be injured in common with the other members of the community. In a proper case the state has a right, by virtue of its high prerogative power, to call upon the courts, through its executive law officer, to protect the rights of its people: *State ex rel. v. Metschan,* 32 Or. 372, 384, 385 (46 P. 791, 53 P. 1071, 41 L. R. A. 692). When the question is one of public right and

the object of the writ is to enforce the performance of a public duty, the relator need not show that he has any legal or special interest in the result, where he shows he is a citizen of the county or district and is interested in the execution of the laws, but the proceeding should nevertheless be authorized by a law officer of the state: *State ex rel. Taylor v. Lord,* 28 Or. 498, 512 (43 P. 471, 31 L. R. A. 473). It is stated in 18 R. C. L. 324, § 272:

"Cases directly involving questions of public right should as a rule be brought in the name of the state or of the people, the person instituting the proceeding appearing as a relator. It is also eminently fitting that such causes be inaugurated by the attorney general, or with his consent, or, at least, that the refusal of that officer to act be shown."

The manner of commencing and prosecuting such actions is referred to and runs through the following cases. The form of the title of the cases indicates the practice to be that such actions will be instituted and prosecuted by the state of Oregon: *State ex rel. Shaw v. Ware,* 13 Or. 380 (10 P. 885); *State ex rel. Durkheimer v. Grace,* 20 Or. 154, 157 (25 P. 382); *State ex rel. Taylor v. Pennoyer,* 26 Or. 205 (37 P. 906, 41 P. 1104, 25 L. R. A. 862); *State ex rel. Taylor v. Lord,* supra; *State ex rel. v. Metschan,* supra; *State ex rel. v. Olcott,* 94 Or. 633, 644 (187 P. 286). See also 38 C. J. 834, §§ 536, 537; 18 R. C. L. 322, 324.

As said by former Mr. Justice BEAN, in *State ex rel. v. Metschan,* supra, at page 384:

"Indeed, the right of the state, through its proper officer, to maintain such a proceeding, would seem to be one of the necessary incidents of sovereignty. Without it the rights of the citizen cannot be protected or enforced in cases where he is unable to act for himself. In a suit by an individual he is required to show some

special injury to himself; and when, as in this case, the wrong complained of is public in its character, affecting no one citizen more than another, it is impossible for him to do so, * * *.''

The facts in the present case differ widely from those in the case of *Gantenbein v. West,* 74 Or. 334 (144 P. 1171), where the real question involved was the constitutionality of a statute and the rights of plaintiff to hold the office of circuit judge, and, as the opinion states, the Governor was perfectly willing to act in the matter as soon as the validity of the statute was determined by the court.

■ We think the present proceeding should have been instituted by the authority of a law officer of the state—the Attorney General or prosecuting attorney for the district.

The demurrer to the alternative writ raises a further and more important question as to the propriety of the court's interfering with the prerogative of the executive.

The government of the state is divided into legislative, executive and judicial departments. As all the departments of government derive their authority from the same source, they in equal degree represent the sovereignty, and each within its own sphere is supreme and independent. In theory, at least, these departments are not merely equal, but are also exclusive. Practically, they are not required to be kept entirely distinct, as their duties sometimes are blended or overlap. It is not possible to wholly avoid conflict between them: 12 C. J. 804, § 236; *In re Willow Creek,* 74 Or. 592 (144 P. 505, 146 P. 475). As said in *State ex rel. Taylor v. Lord,* supra:

"The independence of the different departments in this respect is so complete that, however ill-advised

the action of the legislature or executive may be, and no matter how gross an error may be committed, a court of equity is nevertheless powerless to interfere when rights of property are not involved, unless express authority is conferred upon it to do so'': *People ex rel. v. Cullom,* 100 Ill. 472.

■ Before the court should assume the power to question the action of the executive of the state in such a case, its right to do so ought to be beyond all possible question, and it should be able to place its jurisdiction upon some well-settled ground for interference, which we do not find in this case.

The real effect of the writ of mandamus sought in the present case would be to fix the time for calling the election mentioned, which is not fixed by the constitution or statute. There is no question as to the constitutionality of the statute to which we have referred. There is no controversy in regard to the construction of the constitutional provisions which have been mentioned. No one questions the authority of the executive to call an election for the purpose of electing a senator in Marion county, and the Attorney General has duly advised the executive that he has such authority under the constitution and the statute. The time when such election shall be called, we think, rests in the judgment or discretion of the executive. It is not indicated that the Governor will not call an election if necessity requires in the course of a few days after the legislature convenes. In the declination of the executive to call such an election at the present time at the request of the petitioner, he gives the reasons that, in his opinion, the public sentiment of Marion county does not desire such an election, that the recently enacted amendment to the constitution providing that the legislature may provide means for filling vacancies in such cases is now in effect and in the

judgment of the executive the vacancy can be filled by a method to be provided by the legislature on the first day of its session, or January 12, 1931, and that by not having a special election at an earlier date the rights of the people of the district will not be jeopardized. The executive states with reference to calling an election, ''I deem it very imprudent and unwise at the present time and under the present conditions.''

As will be noticed from the quotation in the opinion of *State ex rel. Taylor v. Lord,* supra, hereinafter set forth, that if the duty pertained to acts which are merely ministerial in their character, which call for no exercise of judgment or discretion, *and do not relate to political or governmental matters,* the Governor of the state, in an appropriate proceeding, may be compelled to perform the duty by the judiciary. In the present case, as we view it, there is both judgment and discretion to be exercised by the executive in determining whether at the present time he should exercise the prerogative as Governor to call the election. It cannot be said that the duty of the executive to call the election at this particular time is merely ministerial and unaccompanied with any element of judgment or discretion: Ferris on Extraordinary Legal Remedies, § 293. In addition, we think that the duty which the petitioner calls upon the Governor to perform is, at least, analogous to a political question.

■ It is a well-settled doctrine that political questions are not within the province of the judiciary, except to the extent that power to deal with such questions has been conferred by express constitutional or statutory provision. It is not always easy to define the phrase ''political question'' nor to determine what matters fall within its scope, but in the present case it seems clear that the election of a senator and the

calling of an election for that purpose is closely related to a purely political matter: 12 C. J. 878, § 381. At page 881, § 384, of that volume, we read:

"Elections are not per se the subject of judicial cognizance, but are matters for political regulation. Subject to express constitutional restrictions, all matters relating to the holding of elections and determining their results, including contests, are for the legislature, free from judicial control": *State ex rel. v. Graves*, 90 Ohio St. 311 (107 N. E. 1018); *Harris v. Schryock*, 82 Ill. 119.

In 6 Words and Phrases, First Series, p. 5445, we find:

"Political Question. It is clearly a political question as to whether or not the proper state authorities shall create an office or shall provide to have it filled, as to how long an incumbent shall hold, and as to the manner in which he shall derive his title to it, with which the courts cannot interfere: *State v. Owens*, 63 Tex. 261, 266."

██ It is generally agreed that the courts have no authority or power to interfere by mandamus with the Governor upon questions involving his judgment and discretion. He cannot be compelled by mandamus to perform duties which are partly discretionary and partly ministerial. As to the power of the courts to enforce the performance of ministerial duties by the Governor, there is a difference of opinion: 38 C. J. 662, § 207. In this state it has been held that where the duty to be performed is purely ministerial and not political and not otherwise objectional, the courts, in a proper case, may exercise their authority. The general rule is that the executive of the state, in the proper discharge of his duties under the constitution, is as independent of the courts as he is of the legislature. The authorities agree in holding that where the duty

sought to be enforced is not merely ministerial, but one involving discretion, it cannot be enforced by the writ: 1 Cooley's Const. Lim. (8th Ed.), pp. 221, 222. In the note on page 223 of the authority last cited, we find:

"There are many cases holding that the governor cannot be compelled to perform any political or executive duty in relation to which he has a discretion." Citing a large number of authorities.

In 12 R. C. L. 1008, § 10, we read:

"It is the well-settled general rule that no court has jurisdiction to require and compel the performance by the governor of his political duties, or the duties devolved upon him as a component part of the legislature, and that no executive act whatsoever, dependent upon the judgment or discretion of the governor, can be coerced by judicial writ."

The governor of a state will not be restrained by injunction from acting under an alleged unconstitutional statute of the state: 2 High on Injunctions, (4th Ed.) § 1323.

In *Marbury v. Madison,* 5 U. S. (1 Cranch) 170 (2 L. Ed. 60), we find the language of Chief Justice Marshall, as follows:

"It is not by the office of the person to whom the writ is directed, but the nature of the thing to be done, that the propriety or impropriety of issuing a mandamus is to be determined."

In *People ex rel. Sutherland v. The Governor,* 29 Mich. 238 (18 Am. Rep. 89), Judge Cooley says:

"In many cases it is unquestionable that the head of an executive department may be required by judicial process to perform a legal duty, while in other cases, in our judgment, the courts would be entirely without jurisdiction; and, as regards such an officer, we should concede that the nature of the case and of the duty to be performed must determine the right of the court to interfere in each particular instance."

In *State ex rel. Taylor v. Lord,* supra, at page 517, we read from the opinion by Mr. Justice WOLVERTON:

"It has been said that injunction and mandamus are correlative in their operation; that where one commands the other forbids; that where there is nonfeasance, mandamus compels the duty, and, where there is malfeasance, injunction will restrain. But this is so in manner only. Injunction is frequently mandatory, and mandamus sometimes operates as a restraint."

At page 523 of the same opinion we read:

"It is the duty of the governor to see that all laws are faithfully executed, and it is now proposed to execute this law. The judicial department is called upon to prevent its execution. Is it competent for it to interpose in this proceeding, and restrain the executive department of the state? It may well be admitted that if the duty pertained to acts which are merely ministerial in their character, which call for no exercise of judgment or discretion, and do not relate to political or governmental matters, the governor of the state may, at the suit of interested parties, in a proceeding appropriate for the purpose, be compelled at the hands of the judiciary to perform them: *Greenwood Cemetery Land Co. v. Routt,* 17 Colo. 156 (15 L. R. A. 369, 28 P. 1125, 31 Am. St. Rep. 284); *Gaines v. Thompson,* 74 U. S. (7 Wall.), 347; Moses on Mandamus, 80; *Enterprise Savings Assn. v. Zumstein,* 15 Cir. Ct. App. 153 (67 Fed. 1000); *Board of Liquidation v. McComb,* 92 U. S. 541. But if it pertains to duties which require the exercise of judgment or discretion to perform, or to matters political or governmental in their nature, all the authorities agree that the executive is clearly independent of the other coordinate departments of government, and is not subject in any manner to their direct supervision or control."

In *Mississippi v. Johnson,* 71 U. S. (4 Wall.), 498 (18 L. Ed. 437), Chief Justice Taney records the following:

"A ministerial duty, the performance of which may, in proper cases, be required of the head of a

department, by judicial process, is one in respect to which nothing is left to discretion. It is a simple, definite duty, arising under conditions admitted or proved to exist, and imposed by law.''

 It is clearly apparent from the setting of this case and the facts portrayed in the alternative writ and the reasons given by the Governor, that the legislature and the executive contemplate some scheme to change the method of holding an election to fill a vacancy in the offices of senators and representatives in the legislature. It is not the province of the court to suggest what laws would be suitable or what can be passed under and by virtue of the amendment to the constitution of November 29, 1930. Suffice it to say that it is not appropriate for the court to interfere or thwart the scheme of the legislature and executive to change the method of filling such vacancies, under authority conferred by the people in adopting the amendment which was referred to them by the legislature.

Many questions which have a bearing on the matter in issue in the present case are so thoroughly and plainly discussed in the opinions to which we have referred, especially the opinion by Mr. Justice WOLVERTON in *State ex. rel. Taylor v. Lord,* supra, and the time we have to devote to it on account of the desire to have the matter disposed of at an early date, that we refrain from discussing the questions involved at any greater length.

It follows that the demurrer should be sustained. It is so ordered.

COSHOW, C. J., ROSSMAN and KELLY, JJ., concur.

BELT, BROWN and RAND, JJ., concur in the result.