## Hamilton v. Pinchot et al.

*W. S. Bailey* and *Frank S. Busser,* for plaintiff.
*William A. Schnader,* Attorney General, for defendants.

WICKERSHAM, J., June 23, 1931.—It is to be noted that the plaintiff, in her bill of complaint, names as one of the defendants Gifford Pinchot, Governor of the Commonwealth of Pennsylvania. She alleges that she has been a

notary public for many years; that she filed her application for renewal of her commission on or about March 3, 1931, and that in her said application she erased the words and refused to subscribe to the following language included therein, to wit, "and loyally support the policies of the people of the Commonwealth in the election of 1930." She alleges that the Governor refused to renew her commission and reappoint her because she refused to subscribe to this statement, and that the printing and distribution of said blanks, including said political pledge, involves an additional expense to the Commonwealth of Pennsylvania and an unlawful expenditure of state funds and should be enjoined. She prays for equitable relief as follows: "That defendant, Gifford Pinchot, be enjoined preliminarily until hearing, and perpetually thereafter, from directing and insisting upon the inclusion of said political pledge as a condition precedent to appointees for office."

To the bill of complaint of the plaintiff the Attorney General filed a petition, raising questions of jurisdiction under the Act of March 5, 1925, P. L. 23, in which it is contended that the court is without jurisdiction to enjoin the Governor; that the bill seeks to control the manner of the Governor's appointments, and there is no authority, statutory or otherwise, which gives the court jurisdiction in this proceeding. Upon presentation of the petition of the Attorney General, the court granted a rule on the plaintiff to show cause why the bill of complaint in the said case should not be dismissed as to the Honorable Gifford Pinchot for want of jurisdiction of the court to entertain it, to which rule the plaintiff filed an answer.

It clearly appears that the Governor is the principal subject of the plaintiff's attack. His refusal to appoint plaintiff a notary public is the gravamen of the whole complaint.

The authority of the Governor to appoint notaries public is first conferred by the Act of March 5, 1791, 3 Sm. Laws, 6, section 2, 57 P. S. § 1, which provides:

"After the first day of September next, the governor shall appoint and commission a competent number of persons, of known good character, integrity and abilities, as notaries public, for the commonwealth of Pennsylvania, to reside within such place or places, within this state, as the governor shall in and by the respective commissions direct; . . . no person shall be commissioned as a notary, who shall not have resided within this commonwealth two years next previous to his appointment."

Section one of the Act of February 19, 1873, P. L. 36, 57 P. S. § 2, provides as follows:

"The governor is hereby authorized to appoint as many notaries public as in his judgment the interests of the public may require: *Provided,* That before any commission shall be issued under this act, a receipt from the state treasurer shall first be produced, showing the payment of twenty-five dollars into the state treasury, for the use of the commonwealth."

Under these acts the Governor's discretion in the appointment of notaries is without limit. He is the judge not only of the persons to be appointed, but of the number also. He could refuse to appoint any particular person for any reason he might have, or for no reason at all. The same broad discretion applies to reappointments.

We think the courts have no authority to command the Governor to appoint any particular person or to appoint any notary public; much less may the courts dictate the reasons the Governor may give for refusing to appoint. Fundamentally, the Governor, whenever engaged in any duty of his office, is exempt from any process of the courts.

Let us assume, for the sake of illustration, that we were to enjoin the Governor as prayed for in the bill of complaint. What would happen if he refused to obey the injunction? How could we enforce it? The only way we could enforce our decree would be by attachment for contempt of court. The Governor, having proper regard for the dignity and welfare of the people of this Commonwealth, is not likely to submit himself to imprisonment on the decree of this court or to permit his officers and coadjutors to be thus imprisoned. Were we, then, to permit the attempt to enforce this attachment, an unseemly conflict must result between the executive and judicial departments of the government. We need not say that prudence would dictate the avoidance of a catastrophe such as here indicated: Thompson v. German Valley R. R. Co., 22 N. J. Eq. 111; per Gordon, J., in Appeal of Hartranft et al., 85 Pa. 433, 446. Commenting upon the New Jersey decision heretofore referred to, it was said by Mr. Justice Gordon, page 447:

". . . We are inclined to think the conclusion thus reached is wise and discreet; and it is supported by the best text writers of our times."

If the court could shut the Governor up in prison for refusing to obey its mandate, why may it not convict him for a breach of the peace? We again quote from the decision of Mr. Justice Gordon in the Hartranft case, page 445, wherein he says:

"We had better at the outstart recognise the fact, that the executive department is a co-ordinate branch of the government, with power to judge what should or should not be done, within its own department, and what of its own doings and communications should or should not be kept secret, and that with it, in the exercise of these constitutional powers, the courts have no more right to interfere, than has the executive, under like conditions, to interfere with the courts. In the case of Oliver v. Warmoth, 22 La. Ann. 1, it was held (per Taliaferro, J.), that, under the division of powers, as laid down in the federal and state constitutions, the judiciary department has no jurisdiction over or right to interfere with, the independent action of the chief executive, in the functions of his office, even though the act he is required to perform be purely ministerial."

Commenting upon this statement, Mr. Justice Gordon says, at page 445:

"This is putting the matter on very high grounds, for, in such case, no other officer would be exempt from the mandatory power of the judiciary. No case could more forcibly exhibit the extreme reluctance of courts to interfere with the functions of the supreme executive, for the hypothesis put is the refusal of the Governor to perform a duty, cast upon him by law, of a character strictly ministerial. We think, however, that the ground upon which this decision stands, is substantial; for, as the learned justice well argues, the difficulty arises in the attempt to establish a distinction between ministerial and discretionary acts as applied to the Governor, and then to conclude that the former may be enforced by judicial decree; it is objected, however, that the doctrine is unsound in this, that it gives to the judiciary the large discretion of determining the character of all acts to be performed by the chief executive; that this would infringe his right to use his own discretion in determining the very same question; that he must, necessarily, have the unconditional power of deciding what acts his duties require him to perform, otherwise, his functions are trammelled and the executive branch of the government is made subservient to the judiciary."

The general principle is stated by Mr. Justice Gordon on page 444 of the Hartranft case as follows:

"The general principle is, that whenever the law vests any person with the power to do an act, at the same time constituting him a judge of the evidence on which the act may be done, and contemplating the employment of agents through whom the act is to be accomplished, such person is clothed with discretionary powers, and is *quoad hoc* a judge. His mandates to his legal agents, on his declaring the event to have happened, will be a protection to those agents: Vanderheyden *v.* Young, 11 Johns. 158."

The immediate question in the Hartranft case was as to the power of the court to compel the Governor to testify before a grand jury. The court ruled in favor of the Governor. Chief Justice Agnew filed a dissenting opinion, but even in this dissenting opinion (page 455) the Chief Justice conceded that *"the judiciary cannot control or interfere with the discretion of the Governor in the exercise of an executive function."* (Italics are those of the Chief Justice.)

We conclude, therefore, as to the choice of persons whom the Governor will appoint to office, his discretion is of the broadest kind; and as to the persons whom he will not appoint, it is unlimited. We are of opinion that by reason of the Governor's position in the state government he is not subject to the jurisdiction of this court in a case of this character, and the bill is dismissed.

It is contended that the Governor, and not the Attorney General, should have raised the preliminary question of law. We cannot agree with this contention. If our process cannot reach the Governor, he is not bound to obey it. On the other hand, the Attorney General is the chief law officer of the Commonwealth authorized to appear for the Governor and all other state officers in matters of law; and this authority certainly carries with it the power to raise preliminary questions of law in a case of this character.

As to defendant Stahlnecker, the plaintiff makes three averments, that he is private secretary to the Governor, that he sent to the plaintiff the application blank containing the pledge of which she complains, and that the action of this defendant in distributing and insisting upon said political pledge is wholly illegal. The prayer of the bill as to this defendant is that he be enjoined "from distributing and insisting upon said political pledge as a condition precedent to appointees for office."

We think there is no averment on which to base the relief prayed for. There is no allegation that Stahlnecker insisted on the so-called political pledge "as a condition precedent to appointees for office;" nor is there any attempt to show that the defendant could insist on any pledge. All appointments here concerned are made by the Governor. He alone can prescribe conditions for appointments. Mr. Stahlnecker has no appointing power; whatever acts he does must be regarded as the acts of the Governor whom he serves. The Governor appoints; therefore, any conditions imposed on prospective appointees can be regarded only as the Governor's. An injunction against the Governor's secretary to control official acts of the Governor would be futile.

For the reasons found in Appeal of Hartranft, *supra*, from which we have quoted at length, we think the lack of jurisdiction as to the Governor carries with it the lack of jurisdiction as to the acts of his secretary.

We think the same reasoning applies to the defendants, Edward Martin, State Treasurer, and James F. Malone, Secretary of Property and Supplies. The bill proposes to enjoin the State Treasurer from paying for the printing of said political pledge and to enjoin the Secretary of Property and Supplies from directing the printing of said political pledge. Of these two defendants it need only be said that the defendant Malone is an appointee of the Gov-

ernor, and in directing the printing of said pledge on the application of the plaintiff he was acting under instructions from the Governor. If we cannot restrain the Governor, and we have held this cannot be done, how can we restrain his appointee acting under his instructions? We think to state this question is to answer it.

It is the duty of the State Treasurer to pay bills when presented to him properly approved. We think he has no discretion in the matter, and the bill as to him should also be dismissed.

The further objection to the bill that it raises a political question may also be fatal: 6 Words and Phrases (first edition), 5445; Putnam *v.* Norblad, 293 Pac. 940 (Supreme Court of Oregon). However, in view of the conclusion which we have above expressed, it is not necessary to determine this contention.

For the reasons above stated, the bill is dismissed at the cost of the plaintiff. From Homer L. Kreider, Harrisburg, Pa.