# CARMAN, ET AL. *v.* WOODRUFF, ET AL.

COUNTY FUNDS—TAX-PAYER MAY SUE TO PREVENT FRAUDULENT DISPOSITION OF—A tax-payer has such an interest in avoiding an increase in the rate of taxation as will enable him to maintain a suit in equity to annul a fraudulent disposition of county funds, or property by the county court, under color of authority, and to restore the same to their proper custody, when necessary to prevent their loss to the county. The county is not a necessary party to such a suit.

APPEAL from Curry County.

*William R. Willis and Webster & Crawford,* for appellants.

*S. H. Hazard,* for respondents.

By the Court, WATSON, J.:

This suit was brought by respondents as tax-payers of Curry county, Oregon, on behalf of the whole body of tax-payers of the county, to annul and avoid certain proceedings of the county court, composed of the appellants, Delos Wooruff, judge, and Patrick Hughes and James A. Cooley, commissioners in county business, on the ground of fraud and collusion among themselves, and with their co-appellant, John H. Gauntlett, and to have certain sums paid out of the county funds, under color of such proceedings, restored to the county treasury. The appellants filed a demurrer to the complaint, which was overruled; and upon their failure

to plead further, the court below rendered a decree against them.

The complaint states facts which, in our opinion, clearly show a fraudulent alienation of county property, and misappropriation of county funds; and the important questions raised by the demurrer, and determined by the decree of the lower court are: 1. Whether a tax-payer can maintain a suit of this character. 2. Whether Curry county is a necessary party.

Upon the first point the authorities are by no means harmonious. It has been held by the highest courts of New York, Massachusetts, Michigan and Kansas, in the absence of any statute on the subject, that wrongful acts of this character on the part of municipal authorities, affect all members of the community alike, and produce no such special injury to any individual as entitles him to equitable redress. (*Doolittle* v. *Supervisors of Broome Co.*, 18 N. Y., 155; *Roosvelt* v. *Draper*, 23 N. Y., 318; *People* v. *Ingersoll*, 58 N. Y., 1; *Hale and others* v. *Cushman and others*, 6 Met., 425; *Carlton* v. *Salem*, 103 Mass., 141; *Chaffer* v. *Granger*, 6 Mich., 51; *Miller* v. *Grundy*, 13 Mich., 540; *Croft* v. *Jackson County*, 5 Kansas, 518; *Bridge Co.* v. *Commissioners*, 10 Kansas, 526.)

The high character of these courts for ability and learning, as well as the elaborate examination of the question which their opinions disclose, entitle these decisions to great consideration. But the array of authority holding the opposite view, is inferior neither in point of numbers or respectability. In addition to numerous cases to which our attention has been directed, where tax-payers have been permitted by the courts to maintain such suits without any question having been raised as to their capacity to sue in that character, and which cannot be said to possess no

weight on a question like the one we are considering, we may cite the following cases where the doctrine that the tax-payer has the right to bring such suits is either expressly decided or mentioned with approval: *Rice* v. *Smith, County Judge,* 9 Iowa, 570; *Cornell College* v. *Iowa County,* 32 Iowa, 520; *Colton et al.* v. *Houchett et al.,* 13 Ill., 615; *Drake et al.* v. *Phillips et al.,* 40 Id., 388; *Harney* v. *The I. C. and D. R. R. Co. and others,* 32 Ind., 244; *Webster* v. *Town of Harwinton,* 32 Conn., 131; *Terrett* v. *Town of Sharon,* 34 Id., 105; *Merrill* v. *Plainfield,* 45 N. H., 126; *Page* v. *Allen,* 58 Pa. St., 338; *Wheeler* v. *Philadelphia,* 77 Id., 338; *West* v. *Ballard and others,* 32 Wis., 168; *Baltimore* v. *Gill,* 31 Md., 375; *Newmeyer et al.* v. *Mo. and Miss. R. R. Co.,* 52 Mo.; *Blening* v. *The City of Galveston,* 42 Tex., 641; *Packard* v. *Commissioners,* 2 Col., 338; *Crampton* v. *Zabriskie,* 11 Otto, 601. Mr. Dillon, in his popular work on municipal corporations, adopts this view, and asserts that "it is the prevailing doctrine on this subject," sec. 731.

In commenting upon the effect and consequences of the opposite course of the New York decisions, up to and including that of *The People* v. *Ingersoll, supra,* Mr. Burroughs, in his treatise on taxation, sums up as follows: "The effect of these decisions in New York, was to leave the inhabitants of a municipal corporation without remedy, where its officers made a fraudulent disposition of its revenues, and caused the legislature to pass an act 'for the protection of tax-payers against the frauds, embezzlements and wrongful acts of public officers or agents,' allowing any person residing in the town assessed for, and liable to pay taxes therein, or who had paid taxes therein within one year previous to the commencement of the action, to maintain an action against such officers. This statute enforces in

New York, what was the general doctrine on the subject in most of the states—that one or more tax-payers might file a bill to restrain the officers of a county, or other subdivision of a state, from levying a tax not authorized by law, and from making any illegal disposition of the revenues of the municipal corporation, and that their interests as citizens and tax-payers, were sufficient to entitle them to maintain a suit." (Burroughs on Taxation, 448.)

An examination of these authorities in detail would be tedious and probably useless. In no case which we have had the good fortune to discover, have we found the grounds upon which the jurisdiction of equity in the premises has been affirmed or denied, very fully discussed. Those authorities which are opposed to the existence of any such right on the part of the tax-payer, proceed on the principle already stated, viz.: that he has no individual interest in the public funds or property, and consequently can suffer no special or peculiar injury from the wrongful acts of public officers in relation thereto. Those holding the contrary doctrine are founded on the proposition that a wrongful and illegal disposal of public funds or property by those who have been entrusted with their care and preservation for public purposes, will necessarily lead to increased rates of taxation to restore the loss, and thereby become the efficient cause of special and peculiar damage to the tax-payer, against which the law is powerless to afford him an adequate remedy.

That the fraudulent or illegal diversion of the funds and property of a municipal corporation from the legitimate public purposes to which they should be applied, would result practically in special and peculiar injury to the tax-payer, whose property must contribute an additional amount to supply the loss occasioned by such diversion, cannot be

gainsaid. His interest in the matter is real and substantial.

But it is contended that he has no such technical interest as can be recognized, either in law or in equity. It seems clear enough that he can have no remedy at law. If the funds and property so diverted are lost to the municipal government, and future assessments are thereby necessarily increased, he cannot, on this ground, impeach them, or resist the imposition of the additional burden. The amount needed for the purposes of municipal government must be supplied. The losses occasioned by the negligence or corruption of municipal officers work no reduction in the amount of the necessary tax; nor has the tax-payer any such legal title in the public funds or property so diverted, as will enable him to recover his proportion from those into whose hands such funds or property have passed, (*People* v. *Ingersoll*, 58 N. Y., 32.) In equity only can he protect himself, if at all. And we think his case falls within the general principles in accordance with which courts of equity administer justice and afford protection to individual rights. The tax-payer may have no legal right, but he certainly has an equitable one, as against those who, through fraud and collusion with municipal officers, have obtained the possession of the public funds and property, which ought by every consideration of equity and justice to be applied to the lawful purposes of municipal government, in reduction of the amount of future contributions from him, in the form of taxes, to supply those same purposes. It seems to be true that the precedents for suits of this nature are of modern origin. But the novelty consists only in the application to a new class of cases, developed in great numbers, as our court reports attest, under the operation of our peculiar system, with its almost countless subdivisions, into municipal departments, of an ancient time and fundamental

principle of equity jurisprudence. The tax-payer has an equity which entitles him to claim, through a court of equity, that he shall not be subjected to the payment of additional sums as taxes on account of the fraudulent and illegal disposal of the public funds and property by public officers, under cover of official action, so long as such funds and property can be reached by their process and restored to the proper custody. The tax-payer does not, in such proceedings, represent the public. He could not do so without authority conferred by statute. Nor does it seem to us that he can be held to represent the whole body of tax-payers, or any interest save his own. (*Du Page County* v. *Jenks et al.*, 65 Ill., 275.)

Any advantage which may result to the public, or other tax-payers, not parties to the suit, must, in our view, be deemed accidental, and not adding to the merits of his cause. That the municipal corporation could itself maintain a suit for the same purpose, we think unquestionable, but this right is not in conflict with the right of the tax-payer to do the same. (Dillon on Municipal Corporations, sec. 736.) Their rights in the premises rest on different grounds. What has already been said as to the nature of the right which enables the tax-payer to bring a suit like this, and the character in which he sues, virtually settles the second point against the appellants. The respondents do not represent the county or sue in its behalf. They can obtain all the relief they are entitled to, and all they have received by a decree against the parties already before the court. Besides the propriety of making the county a party when the suit was against the members of the county court, yet in office, and who, under the law must have appeared for and represented its interests, was at least doubtful, and we think

it was not necessary. The decree of the court below is affirmed.

Decree affirmed.