Decided at PENDLETON July 31, 1897.

BROWNFIELD v. HOUSER.

(49 Pac. 843.)

INJUNCTION BY PRIVATE CITIZEN—ILLEGAL DEBTS.—A taxpayer may maintain a suit in his own name to restrain the creation of an illegal debt by a municipal corporation where the effect of such corporate action will be to increase his burden of taxation *(State* v. *Pennoyer,* 26 Or. 205, and *Dorothy* v. *Pierce,* 27 Or. 373, cited and approved); but where the funds have already been misapplied and are gone, the proper party to complain is the injured corporation, either in its own name or on the relation of some proper person.

CONSTITUTIONAL LAW—FEES OF OFFICERS.—The act of 1893, as amended (Laws 1895, p. 77), fixing the compensation of sheriffs, clerks, and other county officers, does not violate article IV, section 23, subd. 10, of the State constitution, prohibiting special or local laws for the assessment and collection of road, township or county taxes, even if it be conceded that the fees collected by said officials are taxes: *Northern Counties' Trust* v. *Sears,* 30 Or. 388, followed.

INJUNCTION BY TAXPAYER TO PREVENT THREATENED INJURY.—A private taxpayer may maintain a suit to enjoin the issuance of a warrant for items illegally allowed by the county court.

"EXPENSE ACCOUNTS" OF SHERIFFS—ITEMIZED BILL.—Section 6 of the act of 1895 (Laws 1895, p. 81), precludes a sheriff from being reimbursed by a county for any expense that he may incur in the course of traveling on official business within his county, and for mileage, as such, while traveling without the county to receive a prisoner already in custody. When a claim for expenses is made under this latter clause, it must be in the form of a detailed account, accompanied by the proper proofs, so that the auditing officer can determine whether each item was an actual expense necessarily incurred.

EXPENSES OF SHERIFF—MILEAGE.—Mileage, as such, except in the cases mentioned in the last clause of section 6, was abolished by the fee bill of 1895 (Laws 1895, p. 77), and a sheriff traveling outside of his county to receive a prisoner is entitled to be reimbursed for only his actual necessary outlay.

OFFSET AGAINST SHERIFF'S ACCOUNT.—In a suit by a taxpayer to enjoin the county clerk from issuing to the sheriff a warrant for a claim allowed by the County Court, payments theretofore made by the county to the sheriff cannot be inquired into, or offset against the portion of his account conceded to be valid.

From Umatilla: STEPHEN A. LOWELL, Judge.

Suit by C. W. Brownfield to restrain the officials of Umatilla County from issuing to Zoeth Houser, the county sheriff, a warrant for a certain sum theretofore audited and allowed by the County Court, but claimed to be partly composed of items that were properly not chargeable against the county; and to obtain an accounting of sundry amounts said to have been before improperly paid to the sheriff.    Plaintiff appeals from an order sustaining a demurrer to his complaint.

REVERSED.

For appellant there was a brief over the names of *Balleray & Butler*, with an oral argument by *Mr. John J. Balleray.*

For respondents there was a brief over the names of *L. B. Reeder* and *Carter & Raley*, with an oral argument by *Mr. James H. Raley* and *Mr. Reeder.*

Opinion by MR. CHIEF JUSTICE MOORE.

This is a suit to restrain the county clerk of Umatilla County from issuing to Zoeth Houser a county order for services performed by him as sheriff.    The plaintiff alleges that he is a resident taxpayer of Umatilla County, and that Zoeth Houser is sheriff, William Martin county

judge, John H. Adams and T. P. Gilliland are county commissioners, and Benjamin S. Burroughs is county clerk, of said county; that said sheriff is entitled by law to receive from said county an annual salary of $2,500, and, in addition thereto, certain compensation for the board and keeping of persons imprisoned in the county jail, and also his actual and necessary expenses when required to travel in another county or state to make an arrest or receive a prisoner; that in May, 1896, the County Court audited a claim of said sheriff for $1,067.25, of which the following items were illegally allowed: Inland ·Telephone & Telegraph Co., $23.50; Blue Mountain Telephone & Telegraph Co., $1.25; mileage, $221.60; expenses of Laura Strickler to refuge home, $50.00; fare of Fred Lloyd to Echo, $2.25; Daniel McKeen, fare to reform school, $14.00; fare and expenses of G. W. Hull to Roseburg, $14.55; sundry bills, $100.87; that the warrant therefor has not been issued, but the county clerk threatens to draw and deliver the same to the said Houser, and, unless restrained, will carry his menace into execution, thereby injuriously affecting plaintiff's pecuniary rights as a taxpayer, for which injury, if permitted, he has no adequate remedy at law. It is further alleged that the County Court at its regular terms, from September, 1894, to March, 1896, illegally audited and allowed accounts presented to it by Houser for services claimed to have been performed, the items of which are set out, whereby he has been permitted to draw from the treasury of said county the sum of $6,684.59 more than he was entitled to receive, and prays that he may be required to account for and pay into the county treasury all moneys so illegally drawn therefrom, and that the county clerk may be enjoined from issuing to him any county orders for services claimed to have been performed by him. A demurrer to the complaint on the grounds that it did not state facts sufficient to constitute

a cause of suit, that several causes were improperly joined, and that plaintiff had no legal capacity to sue, having been sustained for alleged misjoinder, the plaintiff declined to plead further, whereupon a decree was rendered dismissing the suit from which he appeals.

The right of a taxpayer, in his own name, to have a municipal corporation and its officers restrained from illegally creating debts, thereby increasing the burden of taxation, has been recognized in this State *(Carman* v. *Woodruff,* 10 Or. 133; *Wormington* v. *Pierce,* 22 Or. 606, 30 Pac. 450; *Sherman* v. *Bellows,* 24 Or. 553, 34 Pac. 549; *State* v. *Pennoyer,* 26 Or. 205, 25 L. R. A. 862, 37 Pac. 906; *Dorothy* v. *Pierce,* 27 Or. 375, 41 Pac. 668); and hence the important questions raised by the demurrer are whether there is a misjoinder of causes of suit, and, if not, does the complaint state facts sufficient to entitle plaintiff to the relief demanded, or any part thereof.

Assuming that the money alleged to have been drawn from the county treasury by Houser prior to May, 1896, was so drawn upon county orders illegally authorized by the County Court, and that the county, in its corporate capacity, or upon the relation of a proper person, may maintain an action for its recovery, can the plaintiff in his own name assert a similar right, or compel the sheriff to account for or pay it over to the county treasurer? It would seem, upon principle, that the right of a taxpayer in his own name to restrain a municipal corporation and its officers from illegally creating a debt or disposing of the corporate property or funds must rest upon the doctrine of necessity for prompt action on the part of some one to prevent a threatened injury to the public; and, as the taxpayer is one of the persons who will be injuriously affected by the misapplication of the funds of the corporation by the agents thereof, and must necessarily be compelled to bear an additonal burden if the menace be

carried into execution, equity considers him a real party in interest, and, as a trustee for the public, permits him to invoke injunctive relief. But where the officers of a municipality have already misapplied its funds, the mischief is accomplished and the injury completed, in which case the necessity for an extraordinary remedy does not exist. To allow a taxpayer in his own name to maintain an action to recover corporate property or funds after they had been diverted would be equivalent to opening wide the doors to an indefinite number of actions by persons similarly situated, thereby subjecting the officers and corporation to interminable litigation: 2 Dillon on Municipal Corporations, § 921. When the injury is complete, the unlawful diversion of public funds falls directly upon the municipal corporation and remotely upon each taxpayer, and, since the corporation is the actual party sustaining the direct result of the injury, so should it also be the real party in interest, either in its own corporate name or upon the relation of a proper person to prosecute an action for the redress of the injury after its consummation.

The complaint having alleged that Houser unlawfully obtained from Umatilla County the sum of $6,684.59, which it prayed he might be required to account for and repay, if the facts thus stated were relied upon as constituting an independent cause of suit, the demurrer for misjoinder was no doubt properly sustained; but we think a fair interpretation of the pleading leads to the conclusion that the facts so stated were relied upon only as furnishing an offset to the sheriff's account of May, 1896, for board of prisoners, $22.57, and salary for two months, $416.66, which it is admitted were proper charges against the county. The plaintiff claims that the County Court ought not to have audited these two items of the sheriff's account, for the reason, as he alleges, that Houser had theretofore received other sums in excess thereof to which

he was not entitled, and which the County Court had no legal authority to award. We think this allegation explains the preceding averment, and shows the intent of the pleader, in view of which a motion to strike out would probably have corrected the pleading, and hence the court erred in sustaining the demurrer.

We come now to an examination of the sufficiency of the complaint to state a cause of suit for injunctive relief. Counsel for defendants contend that the general demurrer should have been sustained, for the reason that the salary law upon which the plaintiff relies contravenes subdivision 10 of section 23, article IV, of the State constitution, which inhibits the passage of special or local laws for the assessment and collection of taxes for state, county, township, and road purposes. In *Northern Counties Trust* v. *Sears,* 30 Or. 388 (41 Pac. 931, 35 L. R. A. 188), Mr. Justice WOLVERTON has so completely and lucidly met and answered this objection as to render any further examination of the question unnecessary.

It is also contended that the County Court, having audited Houser's claim, thereby exercised a judicial discretion in determining the amount due him, and if a mistake were made in the conclusion reached it was, in the absence of any allegation of fraud, one of law and not of fact, which precludes the county, even, from maintaining an action thereon. There is seemingly quite a conflict of decisions upon this question, some courts holding that the same reasons which would prevent an individual from recovering back money thus paid should prevail, in the absence of fraud, against a municipal corporation *(Advertiser Co.* v. *Detroit,* 43 Mich. 116, 5 N. W. 72; *County of Wayne* v. *Randall,* 43 Mich. 137, 5 N. W. 75; *Cox* v. *Mayor of New York,* 103 N. Y. 518, 9 N. E. 48), while others hold that a county may offset against the salary of a county official moneys received by him from its treasury

to which he is not entitled by law: *County of Cook* v. *Wren,* 43 Ill. App. 388. We will refrain from passing upon the effect of the County Court's unwarrantable exercise of judicial discretion in allowing Houser's claim, and shall predicate the plaintiff's right upon the allegation that the money has not been paid under such allowance. This right is based upon the plaintiff's threatened injury, and his remedy, if any, consists in restraining the county clerk from issuing to Houser a county order for expenses which, it is alleged, were illegally allowed. If the money had been paid by the county, the injury would be complete, in which case it must be admitted that the right of a taxpayer, in his own name, to invoke injunctive relief or maintain an action against an officer for money had and received should be denied. But here, although the claim has been allowed, no warrant evidencing the amount thereof has been issued, without which no payment can be made thereon out of the county funds, and until this has been done the right of a taxpayer to invoke the aid of equity to prevent the threatened injury should be recognized.

The unpaid bill of May, 1896, contains, among others, the following charge: "Mileage, $221.60." The statute, having prescribed an annual salary for the sheriff, precludes any charge for expenses incurred on account of travel necessitated by the performance of his official duties in Umatilla County. Nor is he entitled to compensation for "mileage," as such, when compelled to travel in another county or state to make an arrest or receive a prisoner. The County Court having audited and allowed this item, it, no doubt, considered that the charge was a valid claim against the county for expenses incurred by the sheriff in being compelled to travel in another county or state; but, before he can claim to be reimbursed therefor, he must file with the county clerk an account of his actual and

necessary expenses: Laws 1895, p. 77, § 6. The actual expense incurred may not have been necessary, for the sheriff might possibly hire a team and carriage with which to make a long journey or to transport a prisoner, when he could be better accommodated by traveling on the cars, and thereby lessen the expense, also, in which case the County Court might find that the expense incurred was unnecessary, and refuse to audit or allow the bill for more than the necessary outlay. The "expense account" demanded by the statute must mean a detailed statement of the several items constituting the charge, and not a lumping sum; otherwise the County Court could not intelligently act upon or audit the bill. If this charge represents the actual expenses of the sheriff incurred while traveling in another county or state in the performance of official duty, he is entitled to be reimbursed for the outlay; but if "mileage" as such—which was intended by the legislative assembly to be abolished—is sought to be recovered, the County Court had no authority to audit the claim therefor. In all claims of this character we think the ends of justice would be subserved by requiring the sheriff to make proof of the bona fides thereof.

As to the other items of the sheriff's bill of May, 1896, they are, no doubt, proper charges against the county, and such as the County Court ought to allow. It is evident that the business pertaining to the sheriff's office can be more expeditiously transacted by permitting the sheriff to make use of the telephone and telegraph in the performance of his official duties. Deprived of these means for the rapid transmission of information, he would be unable to cope with expert criminals, and Umatilla County would become a paradise to law-breakers who were not caught in the act of violating the law. The item, "sundry bills, $100.87," having been audited and allowed, is, no doubt, a proper charge against the county, but a memo-

randum of the items thereof should have been attached
to the bill, in the absence of which it is vulnerable to the
objuction urged against it. The other items of the ac-
count speak for themselves; but the plaintiff having
alleged that they also are illegal renders it necessary that
an issue should be framed and this illegality established, if
he would enjoin their payment; but he has no right in this
suit to inquire into or offset any payments heretofore made
by the county against that portion of the sheriff's account
which he concedes to be valid. It follows that the decree
is reversed, and the cause remanded with directions to
overrule the demurrer, and for such further proceedings as
may be necessary, not inconsistent with this opinion.

REVERSED.

Decided April 5, 1897; rehearing denied.