Argued 23 April; decided 11 May, 1900.

## BURNESS *v.* MULTNOMAH COUNTY.

[ 60 Pac. 1005.]

EQUITY—TAXPAYER'S INJUNCTION AGAINST ILLEGAL CONTRACT.

1. An individual taxpayer may maintain a suit to enjoin the illegal diversion of public funds or property when it appears that the result of such diversion will be to increase the rate of taxation to be borne by all taxpayers: *Brownfield* v. *Houser*, 30 Or. 534, applied.

COUNTIES—ILLEGAL CONTRACT TO COLLECT TAXES.

2. A contract by county commissioners providing that, in consideration of N's agreeing to assist in the collection of delinquent county taxes, the county court will order the issuance of an alias warrant for their collection, and will advertise and sell the land and mortgages described in certain delinquent tax rolls to be prepared; that the proper county officers will bid in all property sold for which there may be no other bidders; and that N may obtain the certificate for any parcel so sold by paying the amount for which it had been sold to the county, is void as interfering with the duties of the county court, in that it provides in advance for the issuance of alias warrants, and requires the county judge to bid in all property offered for sale thereunder for which there may not be other bidders.

COUNTIES—INTERFERENCE WITH PUBLIC OFFICERS.

3. A contract between a board of county commissioners and a private person under which the latter is to furnish corrected descriptions for parcels of realty not correctly or sufficiently described in the tax rolls, and the board is to direct the clerk to use such corrections in preparing delinquent tax rolls is void as an attempt by the board to control the action of the clerk by making him prepare false delinquent rolls and causing him to alter the public records.

From Multnomah : JOHN B. CLELAND, Judge.

This is a suit by James J. Burness, a resident and tax-payer of Multnomah County, against the board of county commissioners for that county and others for a decree annulling and declaring void a contract between the county and defendant Noble. On September 19, 1898, Noble and the county judge (assuming to act for the county) entered into the following contract :

"This memorandum and agreement, made this nineteenth day of September, 1898, by and between the County of Multnomah, State of Oregon, party of the first part, and H. E. Noble, party of the second part, witnesseth : That whereas a large amount of delinquent taxes upon mortgages and other real property for the years 1887 to 1895, inclusive, still remains unpaid, and the county has been wholly unable to collect the same by ordinary means ; and whereas by reason of the lapse of time, and from other causes, it has been found, and is still deemed, impossible to find bidders for a great amount of such property if exposed for sale in the ordinary course ; and whereas the county is desirous of making an arrangement whereby the collection of said taxes may be energetically prosecuted without loss or expense to the county. .Now, therefore, it is agreed between said county and said H. E. Noble, that the county court shall make an order for the issuance of an alias warrant or warrants for the collection of all delinquent mortgage and real-property taxes for the years 1887, 1888, 1889, 1890, 1891, 1892, 1893, 1894, and 1895, and shall cause to be made out such delinquent rolls or lists as may be proper or necessary for the collection of such taxes, the same to be corrected as hereinafter provided, and to advertise and sell, in due form, and in all respects as provided by law, the real property and mortgages upon which taxes are delinquent for the said years, or any of them, mortgage taxes to be collected from the land mortgaged, or from the mortgagee, as the court may specifically direct ; that the county judge shall bid in for the County of Multnomah all property offered at such sale for which there shall be no other bidders, and shall take certificates of

sale to the county, in due form of law; that in consideration of the terms and conditions of this agreement, to be kept and performed by said H. E. Noble, said certificates shall be forthwith assigned, transferred, and set over by the proper officers of the county to said H. E. Noble, or to such person as may be designated, but in such case said Noble shall remain responsible for the due performance of all conditions of this contract on his part in like manner as if assignment had been made to himself, such certificates to remain in the custody of the county judge. And the said H. E. Noble agrees to prepare at his own cost and expense, and furnish to the county, corrected lists of the various properties to be sold for said taxes, giving corrected descriptions of the real property as the same appear on the deed and mortgage records of Multnomah County, showing double assessments and taxes paid, but not credited, and other errors affecting collection of such taxes, and generally furnishing such facts and details as may be necessary, supplementary to the rolls and returns now on file or of record for the taxes of such years, as shall enable the proper officers to make out complete and correct rolls of such delinquent taxes, and of the properties to be sold therefor, so far as such facts can be ascertained from diligent and careful examination of the county records; the county, on its part, agreeing to make use of all such data, and to take all steps and proceedings carefully and precisely in accordance with law, so far as possible. And said Noble further agrees to use all due and diligent effort for the collection and enforcement of such taxes, availing himself of the means and methods followed by him in the case of taxes which he bids in for himself or others, and particularly to seek out and obtain, as far as possible, the addresses of all persons owning or interested in any of the properties sold, whether resident or nonresident, and to notify such persons of the taxes due, and seek payment from them, and generally to take all lawful means for the collection of such taxes out of the property taxed, or from the persons against whom such taxes are charged, or their successors or assigns; and on the payment of any tax or redemption of the property

sold by or for any taxpayer, or his successors or assigns, the county shall receive out of such moneys the amount of the tax and its actual cost lawfully expended, and all sums in excess thereof which may be lawfully collected, including penalty, interest, and redemption fees, shall be retained by said Noble, and shall constitute his sole compensation under this contract; *provided*, that in no case where collections are made shall the compensation of said Noble be less than the penalties now provided by law; but said Noble is to make no charge whatever against the county for his services under this contract. It is further expressly agreed and understood by and between the parties hereto that the county court is left free and untrammeled in making any compromise or concessions in the settlement of any irregular or illegal assessments, and the said H. E. Noble shall only receive compensation of such proportion of the amount collected as the penalties provided by the law now in force bear to the whole amount due, based on the actual amount of money received by the county in such cases. Where any tax and costs are wholly remitted, said Noble shall receive no compensation, and said county shall retain the absolute right to adjust any and all claims for taxes so that no injustice may be done the owner of property included under this contract. It is also understood and agreed that said work shall be diligently and vigorously prosecuted by said H. E. Noble; that he shall make reports to the county court when called for, and, in event said work shall not be prosecuted as aforesaid, then this contract shall be declared null and void, and said certificates reassigned.

" In witness whereof, the parties hereto have hereunto set their hands, and caused these presents to be executed by the County Court of Multnomah County, under its corporate seal, the day and year first above written.

(Signed)        MULTNOMAH COUNTY, OREGON,

By W. M. CAKE, County Judge.

(Signed)                               H. E. NOBLE."

After the contract was executed the legislature passed an act providing a separate board for the transaction of county business in Multnomah County, by the terms of which an additional commissioner was provided, who "shall succeed and take the place of the county judge" in the transaction of county business : Laws 1898, p. 28. Thereafter, on November 29, 1898, the following supplemental contract was entered into between the county commissioners and Noble :

"Memorandum of agreement made this twenty-ninth day of November, 1898, by and between the County of Multnomah, State of Oregon, party of the first part, and H. E. Noble, party of the second part, witnesseth, that for and in consideration of the covenants and agreements made and entered into between the parties hereto on the nineteenth day of September, 1898, and to be kept and performed by them, and for the further consideration of avoiding any question as to the legality of said contract so heretofore entered into between the parties hereto, it is now mutually agreed as follows : That the said contract of the nineteenth of September, 1898, be, and the same is hereby modified in the following respects—first, wherever said contract provides that rolls, lists, or other records shall be corrected, it is understood that 'corrected' shall mean only that the descriptions now contained in said records may be completed, and that said rolls shall in all other respects be exactly copied, and no omissions or other alterations made therein, errors and omissions excepted ; second, that, in place of the county judge, it is understood that the county commissioners, as the legal successors of said county judge, shall bid in the properties offered for sale, with the understanding and proviso that the said county commissioners may bid them all in for the purpose and with the intention of clearing up and disposing of all the said delinquent taxes ; third, that the provision in said contract that the certificates of sale be assigned to said H. E. Noble, or some other person named by him, shall be entirely eliminated therefrom, and said certificates shall re-

main the property of Multnomah County after purchase ; that the said Noble shall perform the services otherwise required of him under said contract, and act as agent of the county ; the county to make the collections through the clerk of the county court in the usual manner, and to render to H. E. Noble the same proportions thereof as provided by said contract, and to enter an order directing the clerk to pay the same to him out of the collections made ; fourth, it is further agreed and understood that the said H. E. Noble shall have the right at any time to pay to the County Clerk for Multnomah County the amount for which any parcel has been sold, in which event the said certificate shall, by the proper authorities, be assigned and transferred to said H. E. Noble, with all rights thereunder ; fifth, and said Noble further agrees that, if a suit shall be brought against the county under this contract on account of the adding of descriptions to the assessment roll as contemplated therein, he will defend the same, and pay the costs therein, so that the county shall be put to no expenses in testing said question of such suit. It is further understood and agreed between the parties hereto that the original contract of September 19, 1898, with these modifications as herein set forth, shall be and become the contract of the parties hereto, and be carried out by them under both of said instruments.

"In witness whereof, the said Noble hereunto set his hand and seal, and said Multnomah County, acting by and through the County Commissioners for Multnomah County, by order heretofore duly entered by said board of county commissioners, have set their hands and affixed the seal of the board to this and another instrument, of like date and tenor, the day and year herein first above written.

(Signed)          MULTNOMAH COUNTY,

By PHILO HOLBROOK.

[Seal.]                    W. B. STEEL,

H. C. SMITH,

County Commissioners.

[Seal.]    (Signed)          H. E. NOBLE."

37 OR.—30.

The complaint, after alleging that plaintiff is a resident and taxpayer of Multnomah County, the official character of the other defendants, and setting out the contract and modification thereof in full, avers, in substance, that the contract as modified is illegal and void, as against public policy, and because it was not within the power of the county judge or commissioners ; that, upon the day the modification of the contract was executed, the board of commissioners made an order requiring the clerk to prepare delinquent tax lists for the years 1887 to 1895, inclusive, and to issue and attach thereto a warrant for the collection of the taxes appearing thereon ; that thereupon defendant Noble and the county clerk proceeded to make out such lists, and in doing so incorporated therein false and fraudulent descriptions furnished by Noble of the property taxed ; that the clerk attached to such pretended tax rolls a warrant for the collection of delinquent taxes, under his hand and the seal of the county court, and delivered the same to the sheriff, who advertised the property therein described for sale at various dates between the second and thirteenth days of May, 1899 ; that unless the further carrying out of the contract is enjoined, and it is declared to be void, a large amount of money will be illegally paid out, and valuable property of the county transferred to Noble, without consideration. A demurrer to the complaint was overruled by the court below, and, the defendants refusing to plead further, a decree was entered against them, from which they appeal.     Affirmed.

For appellants there was an oral argument by *Messrs. Richard W. Montague, Martin L. Pipes*, and *Alex. Bernstein*, with a brief over the names of *Pipes & Tifft, Bernstein & Cohen, R. W. Montague*, and *J. C. Moreland*, to this effect :

The question is merely one of power in the commissioners to make this contract.    Section 896 of Hill's Ann. Laws gives the county court (now the county commissioners under the act of 1898) power and authority "to have the general care and management of the county property, funds and business, where the law does not otherwise expressly provide."    This power is general and not special :    *Levy Court* v. *Coroner*, 69 U. S. (2 Wall.) 501 ;    *Shanklin* v. *Commissioners of Madison County*, 21 Ohio St. 575 ;    *Schwamble* v. *Sheriff*, 22 Pa. St. 18 ;    *State* v. *Piatt*, 15 Ohio, 15–23 ;    *Burnett* v. *Markley*, 23 Or. 436.

The doctrine that the county court (now board) has no power to interfere in the discharge of duties assigned by law to other officers is fully recognized in the cases which we cite ; but the common sense of courts has distinguished between the duties of officers and the results sought, between the procedure and its purpose.    Assistance in performing these duties is the purpose of the general grant of power :    *Hoffman* v. *Board of Comrs.* 96 Ind. 84–111 ;    *Biggs* v. *Caldwell County*, 28 Mo. 586 ;    *Martin* v. *Whitman County*, 1 Wash. 533 (20 Pac. 599);    *Allen* v. *Cedar County*, 34 Iowa, 54 ;    *Page* v. *Am. Emigrant Co.* 41 Iowa, 115 ;    *Hawk* v. *Marion County*, 48 Iowa, 472 ;    *Wilhelm* v. *Cedar County*, 50 Iowa, 254 ;    *Call* v. *Hamilton County*, 62 Iowa, 448 ;    *Tasker* v. *Commissioners of Garrett County*, 82 Md. 150.

For respondents there was a brief and an oral argument by *Messrs. Wm. M. Gregory* and *Henry St. Rayner.*

MR. JUSTICE BEAN, after stating the facts in the foregoing words, delivered the opinion of the court.

1.    It is contended that the plaintiff cannot maintain this suit, because he will suffer no direct and peculiar injury from the carrying out of the contract in question.

It is the settled doctrine in this state that an individual taxpayer may, by a suit in equity, restrain and prevent the misapplication or illegal diversion of the public funds or property (*Carman* v. *Woodruff*, 10 Or. 133 ; *White* v. *Commissioners*, 13 Or. 317, 57 Am. Rep. 20, 10 Pac. 484 ; *Wormington* v. *Pierce*, 22 Or. 606, 30 Pac. 450 ; *Sherman* v. *Bellows*, 24 Or. 553, 34 Pac. 549 ; *Avery* v. *Job*, 25 Or. 512, 36 Pac. 293 ; *State* v. *Pennoyer*, 26 Or. 205, 37 Pac. 906, 41 Pac. 1104, 25 L. R. A. 862 ; *State ex rel.* v. *Lord*, 28 Or. 498, 43 Pac. 471, 31 L. R. A. 473 ; *Brownfield* v. *Houser*, 30 Or. 534, 49 Pac. 843); and we think plaintiff is within this rule.    It is stipulated and agreed in the contract that all moneys which would otherwise go to the county on the redemption of lands sold for delinquent taxes for specified years, for "penalty, interest and redemption fees," shall be paid to Noble.    If, therefore, the contract is void, such payment would necessarily be a wrongful diversion and misapplication of the county funds, to the injury of every taxpayer.    It is claimed, however, that, were it not for the contract with Noble, there would be no "penalty, interest or redemption fees" on delinquent taxes for the years specified. But the court is bound to assume that the county authorities will, in good faith, and without the added stimulus of a contract with a private individual, enforce the collection of delinquent taxes as required by law.    The plaintiff, therefore, is entitled to maintain this suit, if the contract is void, as we think it is.    It is not only, in effect, an agreement by the board of county commissioners to use the general governmental machinery in the collection of delinquent taxes for the benefit, primarily, of a private individual, but it undertakes to interfere with the discharge of the duties assigned by law to other officers, and is therefore beyond the power of the board of commissioners to make : *City of Ft. Wayne* v. *Lehr*,

88 Ind. 62;   *Smith* v. *Los Angeles County*, 99 Cal. 628 (34 Pac. 439);   *House* v. *Los Angeles County*, 104 Cal. 73 (37 Pac. 796).

2.   The contract, as modified, stipulates, in substance, that the county court will order the issuance of an alias warrant for the collection of taxes of 1887 to 1895, inclusive, and will cause to be made out delinquent rolls or lists, to be corrected by using the descriptions furnished by Noble of real property or mortgages to be sold for taxes, as the same appear on the deed and mortgage records of Multnomah County, and advertise and sell the real property and mortgages therein described; that the proper county officers will bid in all property offered for sale for which there shall be no other bidders; and that Noble shall have the right at any time to pay to the county clerk the amount for which any parcel has been sold, in which event the certificate shall be transferred and assigned to him.   It is further provided that all collections shall be made through the clerk of the county court in the usual manner, Noble to act as the agent of the county, and to use all due and diligent efforts in the collection of taxes, "availing himself of the means and methods followed by him in the case of taxes which he bids in for himself or others."   On payment of any taxes, or redemption of the property sold, the county is to retain the amount of the tax and its costs, and all sums in excess thereof, including penalty, interest, and redemption fees, shall be paid to Noble, and shall constitute his compensation under the contract, provided that in no case shall his compensation be less than the penalties provided by law, and, if suit be brought against the county under the contract on account of the adding of descriptions to the assessment roll, as contemplated therein, Noble is to defend the same and pay the costs.   Now, this statement of the several provisions of the contract is sufficient, in

our opinion, to show its invalidity. In the first place, it undertakes to interfere with the duties of the county court, by providing in advance that an alias warrant for the collection of delinquent taxes shall be ordered issued by that tribunal. Again, it undertakes to interfere with the duties of the county judge, or his successor, by stipulating that he shall bid in for the county all property offered for sale under such alias warrants, for which there are no other bidders. These objections may be considered as formal and somewhat technical.

3. A more serious and insurmountable one, however, is that the board of county commissioners undertakes by the contract to interfere with the duties of the county clerk, by stipulating how and from what data he shall make delinquent tax lists, when his duties in that regard are specially prescribed by statute, and the board of county commissioners or county court has no control over him, except, perhaps, to see that he faithfully executes the duties of his office. The statute requires the county assessor to set down in the assessment roll "a description of each tract or parcel of land to be taxed, specifying under separate heads the township, range, and section in which the land lies; or, if divided into lots and blocks, then the number of the lot and block" (section 2770); and, after the necessary "alterations in the description of lands or other property upon such roll" has been made by the county court (section 2782), the county clerk is required, within a certain specified time, to deliver a transcript of the assessment roll to the sheriff, with a warrant attached for the collection of the taxes charged thereon (section 2794). If the sheriff shall be unable to collect the same, he is required to make out a statement of the taxes remaining unpaid, with a full and correct description of the real estate taxed, from his tax roll, and return the same to the county court, with the proper affidavit

annexed, by the first Monday in April after the date of the tax list (sections 2809–2811). It is the duty of the county clerk, after the return of the delinquent list by the sheriff, and within ten days thereafter, to make "from said delinquent tax roll a true and correct list of the taxes returned as unpaid, and a correct description of the lands or town lots, if the same can be made" (section 2814), and deliver the same to the sheriff of the county, with a warrant attached, commanding him to levy upon the goods and chattels of the delinquent taxpayer, and, if none be found, upon the real property set forth in the tax list, or so much thereof as may be necessary to satisfy the amount of taxes, costs, and expenses. It thus appears that there is no power or authority vested by statute in any person or tribunal to change the description of real estate contained in the assessment roll after it has been approved by the county court. But the contract with Noble provides that he shall prepare corrected descriptions of the real property to be sold for taxes, "as the same appear on the deed and mortgage records of Multnomah County," and, generally, to furnish "such facts and details as may be necessary, supplementary to the rolls and returns now on file or of record for the taxes of such years, as shall enable the proper officers to make out complete and correct rolls of such delinquent taxes, and of the properties to be sold therefor, so far as such facts can be ascertained from diligent and careful examination of the county records," and the county agrees to make use of such data; thus, in effect, providing for the alteration and changing of a public record, and the making of a new and false delinquent tax roll. Clearly, such a contract cannot be sustained.

The claim is made that, under the contract as modified, the only corrections contemplated of the descriptions of real estate contained in the roll were such as might be

necessary to make them complete. The language of the contract in this regard is that "wherever said contract provides that rolls, lists, or other records shall be corrected, it is understood that 'corrected' shall mean only that the description now contained in said records may be completed, and that said rolls shall in all other respects be exactly copied, and no omissions or other alterations made therein, errors and omissions excepted." What the parties meant by the word "completed" can only be gathered from the other provisions of the contract, from which it is quite clear that a change in the descriptions of real estate was contemplated. This is apparent from the entire contract, and is especially evidenced by the fifth subdivision of the modified contract, wherein Nobles agrees that, if suit be brought against the county "on account of the adding of descriptions to the assessment roll as contemplated therein," he will defend and pay the costs of such suit. So we conclude the contract is susceptible of no other reasonable construction than that it contemplated an alteration and change, if necessary, in the descriptions of real property upon the delinquent assessment rolls for the years specified. It was further argued that under section 2814 the county clerk is authorized, in making up the delinquent list, to go outside of the roll for data from which to obtain a correct description of the land or town lots taxed. But it seems to us the plain and obvious meaning of the section is that the delinquent list shall be made from the delinquent tax roll as returned by the sheriff, and the description of the land or town lots be obtained from that source, and no other.

There are other provisions of the contract which naturally challenge attention, but sufficient has been noted to show its invalidity. It may be conceded that if Mr. Noble had been employed by the county commissioners to com-

pile information which other county officers could legitimately make use of in the performance of their duties, and had contracted to pay him a proper compensation therefor, such contract would be valid: *Burnett* v. *Markley*, 23 Or. 436 (31 Pac. 1050). But the work he engaged to do was not of that character. The decree of the court below is affirmed.                                   AFFIRMED.