Argued 18 July, decided 28 August, 1905.

### SEARS v. JAMES.

82 Pac. 14.

RECOVERY OF PUBLIC FUNDS UNLAWFULLY DIVERTED.

1. After public funds have been diverted an individual taxpayer cannot maintain a suit to recover them, but the State only can so act.

WHO MAY MAINTAIN SUIT TO RESTRAIN THREATENED DIVERSION OF PUBLIC FUNDS.

2. Suit for an injunction cannot be maintained against the superintendent of a public institution on the general allegation that, unless restrained, he will continue to furnish his family with supplies and cause the bills therefor to be paid out of the state funds; he having no authority to disburse state funds, but being merely authorized to purchase supplies for the institution, and present the bills to the state auditing officer, by whom they must be approved before being paid.

INJUNCTION AGAINST MALFEASANCE IN OFFICE.

3. The fact that a public official may be so performing his official duties as to be liable for malfeasance in office does not justify equitable interference at the suit of a taxpayer.

From Marion: WILLIAM GALLOWAY, Judge.

Statement by MR. JUSTICE BEAN.

This is a suit brought by J. K. Sears, a taxpayer, for himself and on behalf of all other taxpayers, against C. W. James, personally and as superintendent of the state penitentiary, to compel that officer to account for and return to the state treasury money alleged to have been expended by him for his own private use, and to account for and

pay over to the state treasury the value of the services
of certain convicts employed by him, and to enjoin and
restrain him from making further expenditures or further
use of convicts. The complaint contains three causes of
suit. In the first it is alleged that in 1903 the defendant
purchased for his own private use a large amount of fur-
niture, and had the bills therefor made out against the
penitentiary betterment fund, and by falsely and fraudu-
lently representing that the furniture so purchased was
for the use and benefit of the penitentiary had such bills
to the amount of about $1,000 audited and paid from such
fund; that neither the whole nor any part of the furniture
was for the use or benefit of the State, but was taken pos-
session of and used by the defendant and his family in
their private, and not official, capacity. The second cause
of suit is that between April, 1903, and January, 1905, the
the defendant supplied his private family with groceries
and provisions from the state funds, and by false and
fraudulent representations caused and procured the bills
therefor to the amount of $900 to be audited and paid
from the money appropriated for the support of the peni-
tentiary, and, unless restrained and enjoined, will continue
to so supply his family with groceries and provisions. The
third cause of suit is that ever since his appointment as
superintendent of the penitentiary the defendant has com-
pelled from four to seven convicts confined in that institu-
tion to do private laundry work for himself and his family,
and perform other menial services in and about his resi-
dence, for the exclusive use and benefit of himself and
family in his and their unofficial capacity; that the labor
of such convicts was worth the sum of fifty cents a day
each, or about $1,000 in all; and that the defendant will,
unless enjoined and restrained, continue to so employ
and use such convicts. The prayer for relief is that the
payments for furniture and groceries be declared null

and void, and that defendant be compelled to return the amount thereof to the fund to which it belongs, and to pay into the state treasury the value of the services of the convicts employed by him, and be perpetually enjoined from supplying his family "with anything whatsoever at the expense of the taxpayers of the State," and restrained from employing prisoners for the use and benefit of himself and family. A demurrer to the complaint was sustained, and the suit dismissed, and the plaintiff appeals.

                                               AFFIRMED.

For appellant there was an oral argument and a brief by *Mr. L. H. McMahan*, to this effect.

I. The right of a taxpayer of Oregon to restrain a misappropriation of public funds by any officer of this State, and to compel restitution, is no longer open to discussion : *Carman* v. *Woodruff*, 10 Or. 133; *Sherman* v. *Bellows*, 24 Or. 553 (34 Pac. 549); *Avery* v. *Job*, 25 Or. 512 (36 Pac. 293); *State* v. *Pennoyer*, 26 Or. 205 (25 L. R. A. 862, 37 Pac. 906).

II. Section 3662, B. & C. Comp., provides that the superintendent of the penitentiary shall not receive the labor of any prisoner for his individual use, while section 3664 provides the salary of such superintendent. In view of these provisions it seems very clear that this court has jurisdiction to grant the desired relief.

I respectfully submit that when an officer, in whatever capacity he may be acting, diverts money raised by taxation from its intended use to objects of personal profit in no way connected with the public interest or welfare, he becomes a public plunderer for private gain, and when done by one having the custody of a fund thus wrongfully diverted, he makes a victim of the taxpayers and himself becomes a thief and embezzler of public funds.

For respondent there was an oral argument by *Mr. William Henry Holmes* and *Mr. John Anthony Jeffrey*,

with a brief over the names of *W. H. & Webster Holmes* and *J. A. Jeffrey*, to this effect.

1. A taxpayer has no right in his own name and relation to maintain a suit enjoining a public officer from performing any official act, unless he shows that a special injury to himself other than that suffered by the public at large will result from such act, and that the act itself is without warrant of law: *Lurhs* v. *Sturtevant*, 10 Or. 170; *Sherman* v. *Bellows*, 24 Or. 553 (34 Pac. 549); *Esson* v. *Wattier*, 25 Or. 7 (34 Pac. 756); *State* v. *Pennoyor*, 26 Or. 205 (25 L. R. A. 862, 37 Pac. 906); *State ex rel.* v. *Lord*, 28 Or. 498 (31 L. R. A. 473, 43 Pac. 471); *State ex rel.* v. *Metschan*, 32 Or. 372 (41 L. R. A. 692, 46 Pac. 791, 53 Pac. 1071).

Further, when the money has already been misapplied, the proceeding must be commenced by the public prosecutor: *State ex rel.* v. *Lord*, 28 Or. 498 (31 L. R. A. 473, 43 Pac. 471); *Brownfield* v. *Houser*, 30 Or. 534 (49 Pac. 843); *McCord* v. *Pike*, 121 Ill. 288 (2 Am. St. Rep. 85, 12 N. E. 259).

2. The defendant C. W. James in person cannot be sued jointly with C. W. James in his official capacity as superintendent of the penitentiary for the reason that the two capacities are entirely distinct: Bliss, Code Plead. § 117.

3. The remedy sought in this case does not come within the recognized grounds of the jurisdiction of equity. Since the facts stated, if they be facts, constitute the crime of embezzlement, and equity will not enjoin the commission of a crime or interfere with the administration of the criminal laws of the State unless there is an interference with property rights: High, Injunctions (3 ed.), § 20; 16 Am. & Eng. Enc. Law (2 ed.), 363; *Coosaw Min. Co.* v. *South Carolina*, 144 U. S. 550.

4. The superintendent of the penitentiary does not draw money except upon vouchers audited by the Secretary of State, who is the disbursing officer of the State: B. & C.

Comp. § 2397, subd. 7. As to what is called the Better-ment Fund, the Governor expends that, and the superin-tendent is not even a party to the proceeding. It seems to us highly ridiculous to ask that a public officer who does not handle any of the funds of the State be required to account to a private individual for an expenditure audited and paid by the proper public officers. Indeed, the state-ment of the proposition is its own best refutation.

5. It would seem that plaintiff's counsel, in the destruc-tion of the vast amount of gray matter necessary to pro-duce the brief for plaintiff in this suit, might have ascer-tained that the State has a complete remedy at law for the acts complained of: *State* v. *Brown*, 10 Or. 215.

It would be unpardonable to attempt at greater length to reduce the absurdity at bar known as the plaintiff's case to a plainer or more palpable absurdity than is manifest by an inspection of the record here presented. The coun-sel for plaintiff, after strenuous efforts in behalf of his client, seems to have but reached the luminous conclusion that the man who steals is a thief and the public officer who purloins is an embezzler. In truth, we can easily im-agine that having been led to this perplexing conclusion by and through such efforts, he felt how peaceful and restful will be that happy land "where moth and rust do not corrupt and where thieves do not break through and steal."

MR. JUSTICE BEAN delivered the opinion of the court.

1. For the purposes of this appeal the averments of the complaint must be taken as true, and the single question is whether plaintiff can maintain the suit. That a tax-payer may invoke the interposition of a court of equity to prevent the illegal disposition of public funds is no longer open to question in this State: *Burness* v. *Multno-mah County*, 37 Or. 460 (60 Pac. 1005), and authorities there cited. But, where the fund has already been wasted or

paid out, the action to recover it back must be brought by the state or municipality to which it belonged. It was so decided in *Brownfield* v. *Houser*, 30 Or. 534 (40 Pac. 843). In that case Houser, who was Sheriff of Umatilla County, had been paid a large amount of money by the county for services, without authority of law, and it was held that the county might maintain an action to recover it back, but an individual taxpayer could not do so. The court said that the right of a taxpayer to enjoin the public authorities from misapplying or misappropriating public funds was well recognized, but, when the fund had already been misapplied, "the mischief is accomplished and the injury completed, in which case the necessity for an extraordinary remedy does not exist. To allow a taxpayer in his own name to maintain an action to recover corporate property or funds after they had been diverted would be equivalent to opening wide the doors to an indefinite number of actions by persons similarly situated, thereby subjecting the officers and corporation to interminable litigation : 2 Dillon, Munic. Corp. § 921. When the injury is complete, the unlawful diversion of public funds falls directly upon the municipal corporation and remotely upon each taxpayer, and, since the corporation is the actual party sustaining the direct result of the injury, so should it also be the real party in interest, either in its own corporate name or upon the relation of a proper person, to prosecute an action for the redress of the injury after its consummation." So far, therefore, as the money already expended for the private use and benefit of the defendant is concerned, the Brownfield Case is controlling, and the plaintiff has no cause of suit.

2. The complaint contains a general averment that the defendant threatens to and will, unless restrained by the court, continue to furnish himself and family with gro-

ceries and provisions, and cause the bills therefor to be paid out of state funds, and that he will continue to use the services of convicts; and it is argued that the plaintiff is entitled to an injunction restraining him from doing so. The defendant has no authority under the law to pay any bills or handle or disburse any state funds. He has authority to make all purchases of supplies needed for the penitentiary or prisoners (B. & C. Comp. § 3655), but the accounts therefor must be presented to and audited by the Secretary of State, and no money can be paid for any purpose on account of the penitentiary except upon warrants issued by that officer: B. & C. Comp. § 3663. The Secretary of State is therefore the auditing officer, charged with the duty of protecting the State from false and fraudulent claims. He is not a party to this suit, and we must assume that he will discharge his duty, and, if defendant approves or presents an illegal claim, that it will be disallowed. Until some such claim has been presented and is about to be paid out of state funds, there is no ground for equitable interference.

3. The statute provides that the superintendent of the penitentiary shall not receive the labor of any prisoner for his individual profit, or be interested in any contract upon which such labor shall be employed: B. & C. Comp. § 3662. If the defendant has or is violating this section, he may be liable for malfeasance in office; but it is in our opinion no ground for equitable interference at the suit of an individual taxpayer.

The decree of the court below is affirmed.

AFFIRMED.